[Cite as *Sayre v. Furgeson*, 2016-Ohio-3500.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## SHELBY COUNTY

MARY ELIZABETH SAYRE,

    PLAINTIFF-APPELLANT,

      CASE NO. 17-15-16

    v.

THOMAS A. FURGESON,

      O P I N I O N

    DEFENDANT-APPELLEE.

Appeal from Shelby County Common Pleas Court
Domestic Relations Division
Trial Court No. 12FSO0001

**Judgment Affirmed**

Date of Decision:  June 20, 2016

APPEARANCES:

    *James R. Kirkland* for Appellant

    *Roberta S. Fay* for Appellee

**WILLAMOWSKI, J.**

### I. Introduction

{**¶1**} Plaintiff-appellant, Mary Elizabeth Sayre ("Mary"), brings this appeal from the judgment of the Common Pleas Court of Shelby County, Ohio, which adopted the magistrate's recommendations on the motion for change of custody filed by Defendant-appellee, Thomas Alan Furgeson ("Thomas"), and ordered that Thomas be named the residential parent and legal custodian of the parties' minor child, C.F. For the reasons that follow, we affirm the trial court's judgment.

### II. Factual and Procedural Background

{**¶2**} The parties were married to each other in June 1997, in the state of Virginia. Two children were born to this marriage, C.F., a boy, and L.F., a girl. During the course of the marriage, the family moved to Albany County, Wyoming. On March 1, 2011, a Confidential Judgment Entry and Decree of Divorce was filed in the District Court, Second Judicial District, in and for Albany County, Wyoming, dissolving the parties' marriage. The parties were awarded "joint legal custody" of the minor children, but Mary had the primary physical custody and control of the children, while Thomas had visitation rights. (R. at 1, Ex. A.) The divorce decree incorporated a document entitled, "Child Custody, Child Support and Property Settlement Agreement," which was executed by the parties. (*Id.*, Ex. A(1).) Among others, the document outlined the duties and responsibilities of the parties with respect to the child custody, visitation, and

support. The document restated that "the parties will share joint legal custody." (*Id.*) On the same date, a Redacted Judgment and Decree of Divorce was filed, removing the children's names from the order. Throughout this opinion we sometimes refer to both decrees jointly as "the Wyoming decree." We will refer to the "Child Custody, Child Support and Property Settlement Agreement," as "the Wyoming agreement."

{¶3} After the divorce became final, Thomas moved to the state of Washington, where he later remarried. Mary moved to Shelby County, Ohio. After their move out of the state of Wyoming, the parties entered a stipulation to modify the prior judgment and decree of divorce. (R. at 1, Ex. B.) Therefore, on March 9, 2012, the district court in Albany County, Wyoming, entered a "Confidential Stipulated Order Modifying Judgment and Decree of Divorce," which stated that "[d]ue to the geographic distance between the parties, material changes of circumstance have occurred since entry of said *Redacted/Confidential Judgment and Decree of Divorce* which warrant modification of its visitation provisions in the best interest of the minor children of the parties." (Emphasis sic.) (*Id.*) Although the order modified visitation rights of the parties, it left unchanged the portions of the prior order that awarded joint legal custody to the parties.

{¶4} On April 9, 2012, Mary filed a "Petition for Registration of Foreign Judgment" in the Common Pleas Court of Shelby County, Ohio, requesting that

the prior orders of the district court from Albany County, Wyoming, be registered in Ohio. (R. at 1.) Mary specifically requested, however, that the matters of child support remain within the jurisdiction of the district court in Albany County, Wyoming. (R. at 16.) Thomas agreed to have the case transferred to Ohio, and the trial court entered a judgment registering the Wyoming decree of divorce, together with its modification, in the State of Ohio.[1] (R. at 18.)

{¶5} Thomas maintained a relationship with his children after his move to Washington. As it relates to C.F., who is the subject of the dispute, Thomas talked to him on the phone several times per week; they exchanged emails, text messages, and communicated by Skype, FaceTime, and Instagram. C.F. spent some time with Thomas in Washington in the summer, during the holidays, and spring break. C.F. became involved in a creative theater camp, where he made a lot of friends. He became close with Thomas's wife and her children, C.F.'s step-siblings. At some point, C.F. started talking about wanting to live with his dad in Washington. Thomas was supportive of the idea but Mary objected to it.

{¶6} On November 4, 2014, Thomas filed a "Motion to Terminate Parenting Plan; Motion to Modify Shared Plan; Motion for In Camera Interview," in the Shelby County Court of Common Pleas. (R. at 23.) The pleading indicated that "the shared parenting plan is no longer in [C.F.'s] best interest"; C.F. "no

---

[1] Although the document filed does not except the child support from the registration in Ohio, the parties agree that the district court in Albany County, Wyoming, retained jurisdiction over the child support issues. (App't Br. at 2; App'ee Br. at 6.) We are not asked to review the child support issues or the trial court's action registering the Wyoming decree in Ohio. Therefore, our comment herein has no effect on the resolution of the instant appeal.

longer wishes to reside with his Mother in Ohio"; and "it is in [C.F.'s] best interest to reside with Father." (*Id.*) Therefore, Thomas requested that the trial court "modify the Shared Parenting Plan or in the alternative terminate[] the Shared Parenting Plan," changing the residential status in the summer of 2015, to allow C.F. to start ninth grade in the state of Washington. (*Id.*) The motion made no requests with respect to the other minor child, L.F.

{¶7} On February 23, 2015, Mary filed a "Motion Regarding Shared Parenting Plan and For Increase in Child Support."[2] (R. at 63.) In this pleading, Mary opposed Thomas's request to change C.F.'s residential arrangements and expressed her willingness "to continue the Shared Parenting Plan." (*Id.*) In the alternative, Mary requested that "the Shared Parenting Plan be terminated" as not being in the children's best interest. (*Id.*) Mary also filed a trial memorandum, in which she argued that a change in custody was not warranted due to a lack of change in circumstances. (R. at 83.) She further argued that a change in custody was not in the best interest of C.F. and that the harm that would result from the change outweighed the benefits of leaving in place the Wyoming decree. (*Id.*) Both parties filed additional pleadings in support of their respective positions. (*See* R. at 84, 86, 87, 90, 92.)

---

[2] Since pursuant to Mary's request, child support issues were retained by the State of Wyoming, they were not reviewed by the trial court. (*See* R. at 170, at 8.) Our discussion of these issues is limited to the necessary references herein.

{¶8} On March 6, 2015, the magistrate of the trial court conducted an in-camera interviews with C.F. and L.F. Thereafter, on March 30, 2015, the parties appeared at a hearing and presented evidence on their positions with respect to the change in custody. On May 5, 2015, the magistrate issued his decision, with the findings of fact and conclusions of law, in which he recommended that the current parenting plan be terminated. (R. at 94.) The magistrate further recommended that Thomas be designated as the residential parent and legal custodian of C.F., while Mary be designated as the residential parent and legal custodian of L.F.[3] (*Id.*)

{¶9} Mary filed a "Request for Findings of Fact and Conclusions of Law," and the magistrate filed an order denying the request on the basis that his decision "contain[ed] factual findings and conclusions of law." (R. at 100, 102.) Mary moved to set aside this order, alleging that the findings in the magistrate's May 5, 2015 decision were not sufficiently explained or supported by law. (R. at 108.) The trial court denied the motion, concluding that the thirteen-page decision issued by the magistrate was sufficiently specific to satisfy the requirements of Civ.R. 53(D)(3)(a)(ii) for findings of fact and conclusions of law. (R. at 114.)

{¶10} On May 20, 2015, Mary filed her objections to the magistrate's recommendations and requested permission to file supplemental objections upon

---

[3] Upon concluding his recommendations as to the custody and visitation schedule, the magistrate added that "[i]f, after completing his freshman year in high school, [C.F.] decides that he is unhappy and wishes to return to Ohio, the parties should agree that [C.F.] may return, without the need for further litigation." (*Id.* at 13.) It does not appear that the trial court adopted this part of the magistrate's recommendations.

the filing of the transcript.  (R. at 107.)  On August 13, 2015, the trial court issued an interim order by which it designated Thomas as the residential parent and legal custodian of C.F., and Mary as the residential parent and legal custodian of L.F. (R. at 121.)  The order was to take effect immediately.  Mary's "objections" to this order, which the trial court treated as a motion for reconsideration, were denied. (*See* R. at 127, 132.)   Mary filed supplemental objections to the magistrate's recommendations on September 14, 2015.  (R. at 159.)  On October 7, 2015, the trial court overruled Mary's objections to the magistrate's recommendations and issued an order terminating the existing parenting plan, designating Thomas as the residential parent and legal custodian of C.F., and Mary as the residential parent and legal custodian of L.F.  (R. at 170.)

{¶11} Mary filed this timely appeal in which she raises five assignments of error, as quoted below.

### III.  Assignments of Error

1. Trial Court erred as a matter of law, abused its discretion and erred against the weight of the evidence by adopting the magistrate's decision to terminate the existing Shared Parenting Plan, over the option of modification, and therefore terminating Plaintiff-Appellant, Mary Sayre's existing residential care and allocated parental rights and responsibilities over the parties' minor child, [C.F.].

2. Trial Court erred as a matter of law, abused its discretion and erred against the weight of the evidence by determining that there was a substantiated and sufficient change in circumstances pursuant to Ohio [R]evised [C]ode 3109.04(E)(1)(a) to modify the existing Shared Parenting Plan.

3. Trial Court erred as a matter of law, abused its discretion and erred against the weight of the evidence by determining Defendant-Appellee, Thomas Furgeson, as the residential parent of the parties' minor child, [C.F.], was in the best interest of the child pursuant to 3109.04(F)(1) to modify the existing Shared Parenting Plan.

4. Trial Court erred as a matter of law, abused its discretion and erred against the weight of the evidence by failing to determine, in addition to the third assignment of error, the requisite threshold in Ohio Revised Code Section 3109.04(E)(l)(a)(i)-(iii), to modify the existing Shared Parenting Plan.

5. Trial Court erred as a matter of law, abused its discretion and erred against the weight of the evidence by adopting the magistrate's decision refusing Plaintiff-Appellant, Mary Sayre's request for findings and conclusion of law in accordance with civil rule 53D(3)(a)(ii).

## IV.    Law and Analysis

### First Assignment of Error—Custody Modification Procedure

{¶12} The first assignment of error concerns a dispute over the procedure that was used to modify the parties' out-of-state custody determination.  Because it is a question of law, we apply de novo standard of review.  *Warner v. Thomas*, 3d Dist. Shelby No. 17-14-04, 2014-Ohio-3544, ¶ 8.  But before we address the exact issue presented by Mary in her brief, we outline Ohio legal procedures used for modifications of parenting decrees, including parenting decrees that originate outside of Ohio.

#### A.  Ability to Change an Out-of-State Custody Determination

{¶13} We start with recognizing that the trial court's authority to change the decree of the district court from Albany County, Wyoming stems from the

Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA), codified in Chapter 3127 of the Revised Code. R.C. 3127.17 states that a court of this state may "modify[4] a child custody determination made by a court of another state" only if two conditions are satisfied. The first condition requires that "the court of this state has jurisdiction to make an initial determination under division (A)(1) or (2) of section 3127.15 of the Revised Code." R.C. 3127.17. The second condition is satisfied if one of the following applies:

> (A) The court of the other state determines that it no longer has exclusive, continuing jurisdiction under section 3127.16 of the Revised Code or a similar statute of the other state or that a court of this state would be a more convenient forum under section 3127.21 of the Revised Code or a similar statute of the other state.

> (B) The court of this state or a court of the other state determines that the child, the child's parents, and any person acting as a parent do not presently reside in the other state.

*Id.*

{¶14} Both conditions seem to have been satisfied in the instant case. C.F. and L.F. have lived in Ohio since August 2011. (*See* R. at 1; R. at 18.) Therefore, the Common Pleas Court of Shelby County, Ohio has jurisdiction to make an initial determination under division (A)(1) of R.C. 3127.15, which requires that Ohio "is the home state of the child on the date of the commencement of the proceeding." Additionally, the Common Pleas Court of Shelby County

---

[4] Within UCCJEA, " 'Modification' means a child custody determination that changes, replaces, supersedes, or is otherwise made after a determination concerning the same child, whether or not it is made by the court that made the previous determination." R.C. 3127.01(11). Therefore, we read the word "modify" herein to encompass any procedure that results in changes to an out-of-state custody determination, including a procedure terminating a prior parenting decree.

determined that neither the parties nor the children reside in Wyoming, thus satisfying R.C. 3127.17(B). (*See* R. at 18.)

B.      *Use of R.C. 3109.04 for the Modification of the Wyoming Parenting Decree*

{¶15} When asking to modify or terminate the Wyoming decree, both parties relied on an Ohio statute for allocation of parental rights and responsibilities, R.C. 3109.04. The application of Ohio law to modify the custody determination seems to be consistent with the provisions of UCCJEA.[5] *See* R.C. 3127.36(A) (providing for the use of "relief normally available under the law of this state to enforce a registered child custody determination made by a court of another state"); *and* R.C. 3127.36(B) (allowing for modification of a registered child custody determination of the court of another state "in accordance with sections 3127.15 to 3127.24 of the Revised Code"); *see also* R.C. 3127.51 ("In applying and construing sections 3127.01 to 3127.53 of the Revised Code, consideration shall be given to the need to promote uniformity of law with respect to its subject matter among states that enact a uniform child custody jurisdiction and enforcement act.").

{¶16} Although both parties agreed that R.C. 3109.04(E) should be used to resolve the case, they differed on which paragraph within that division controls. R.C. 3109.04(E) includes several methods for modifying prior arrangements that

---

[5] While we note that the Wyoming agreement included a provision indicating that it should be construed under Wyoming law, we are not here construing or modifying the agreement but the entire custody decree. Furthermore, neither party demanded that Wyoming law be applied to the agreement. On the contrary, the parties chose to apply Ohio law to resolve the dispute.

allocate parental rights and responsibilities. The method of modification depends on the type of the parenting arrangement originally entered. We thus summarize these methods below.

### C. Standards for Custody Modification Proceedings in Ohio

{¶17} To start with, R.C. 3109.04(E)(1)(a) provides a two-step procedure that is required for modification of any prior court-approved parenting decree, including a shared parenting decree. *See Fisher v. Hasenjager*, 116 Ohio St.3d 53, 2007-Ohio-5589, 876 N.E.2d 546, ¶ 11. Under this standard, the court must first find that "a change has occurred in the circumstances of the child, the child's residential parent, or either of the parents subject to a shared parenting decree." *Wooten v. Schwaderer,* 3d Dist. Union No. 14-08-13, 2008-Ohio-3221, ¶ 3, quoting R.C. 3109.04(E)(1)(a). Second, the court must determine that "the modification is necessary to serve the best interest of the child." *Id.* Under R.C. 3109.04(E)(1)(a), the finding of a change of circumstances is a necessary prerequisite to the further inquiry of whether the modification would be in the best interest of the child. *Fox v. Fox,* 3d Dist. Hancock No. 5-03-42, 2004-Ohio-3344, ¶ 38. R.C. 3109.04(E)(1)(a) further prescribes that "the court shall retain the residential parent designated by the prior decree or the prior shared parenting decree, unless a modification is in the best interest of the child * * * " and one of the subdivisions (i), (ii), or (iii) of R.C. 3109.04(E)(1)(a) applies.

{¶18} In contrast to the two-step procedure outlined above, different standards apply to modification of a shared parenting decree that includes a shared parenting plan. These standards are outlined in R.C. 3109.04(E)(2). *See Kougher v. Kougher*, 7th Dist. No. 10 MA 54, 194 Ohio App.3d 703, 2011-Ohio-3411, 957 N.E.2d 835, ¶ 11 ("Although the language of R.C. 3109.04(E)(1)(a) appears, at first glance, to cover all situations dealing with any change to a shared parenting decree, the next section of the statute clearly provides an alternative review * * * ."); *id.* at ¶ 15 ("The wording of the statute leads to the inescapable conclusion that R.C. 3109.04(E)(2) and its subsections provide different procedures from those set forth in R.C. 3109.04(E)(1) and its subsections."). These standards also distinguish between a shared parenting *plan* and a *decree* because,

> Within the custody statute, a "plan" is statutorily different from a "decree" or an "order." A shared-parenting order is issued by a court when it allocates the parental rights and responsibilities for a child. R.C. 3109.04(A)(2). Similarly, a shared-parenting decree grants the parents shared parenting of a child. R.C. 3109.04(D)(1)(d). An order or decree is used by a court to grant parental rights and responsibilities to a parent or parents and to designate the parent or parents as residential parent and legal custodian.
>
> However, a plan includes provisions relevant to the care of a child, such as the child's living arrangements, medical care, and school placement. R.C. 3109.04(G). A plan details the implementation of the court's shared-parenting order. For example, a shared-parenting plan must list the holidays on which each parent is responsible for the child and include the amount a parent owes for child support.

*Fisher* at ¶ 29-30.

{¶19} Under R.C. 3109.04(E)(2)(a) and (b), both parents may jointly modify the terms of a shared parenting plan, or the trial court may modify the terms of the plan. This action contemplates a continuance of the shared parenting decree, with changes to the terms of the shared parenting *plan* only. *See Fisher* at ¶ 27, 29. But the designation of residential parent and legal custodian is not a *term* of a shared parenting plan and thus, the designation of residential parent and legal custodian cannot be modified under the standards outlined in R.C. 3109.04(E)(2)(a) and (b). *Fisher* at ¶ 27, 31.

{¶20} Another action that changes a prior shared parenting arrangement is termination of the entire shared parenting decree under R.C. 3109.04(E)(2)(c). Here, depending on whether the original shared parenting plan was agreed upon by both parents or by one parent only, termination could occur upon request of one or both of the parents, or upon the trial court's determination that shared parenting is not in the best interest of the child. R.C. 3109.04(E)(2)(c); *Drees v. Drees*, 3d Dist. Mercer No. 10-13-04, 2013-Ohio-5197, ¶ 11-12.

{¶21} In summary, the statute directs that the two-step standard of R.C. 3109.04(E)(1)(a) must be used in all situations except: (1) modifying a *term* of a shared parenting *plan* or (2) terminating a shared parenting *decree* that includes a shared parenting plan.[6] Of interest, modifying "the designation of residential

---

[6] Although under the statutory language the trial court does not need to find a change in circumstances in order to terminate a shared parenting decree, we have noted that R.C. 3104.04(E)(2)(c) "impliedly contemplates that some significant change of circumstances has occurred for the shared parenting that was in the child's best interest when implemented to be no longer in this child's best interest." *Drees* at ¶ 13,

parent and legal custodian of a child" in a shared parenting decree, without terminating the entire decree, requires the two-step procedure of R.C. 3109.04(E)(1)(a), because the designation of residential parent and legal custodian is not a *term* of a shared parenting plan. *Fisher*, 116 Ohio St.3d 53, 2007-Ohio-5589, 876 N.E.2d 546, at syllabus; *see also* R.C. 3109.04(K) *and* (L)(6) (providing that shared parenting could be specified in manners other than designating each parent the residential parent and legal custodian of the child).

{¶22} Because of the difference in standards applicable to shared parenting decrees as opposed to other parenting decrees, it is important to determine whether the Wyoming decree is a shared parenting decree that includes a shared parenting plan as contemplated by R.C. 3109.04(E)(2).

### D.    The Wyoming Parenting Decree under Ohio Law

{¶23} The Wyoming decree awarded Thomas and Mary joint legal custody.[7]   We have previously recognized that under Ohio law the concept of shared parenting "refers to an agreement between parents concerning the care and custody of their children and was previously called 'joint custody.' " *Adams v. Sirmans*, 3d Dist. Hancock No. 5-08-02, 2008-Ohio-5400, ¶ 6, quoting *In re Bonfield,* 97 Ohio St.3d 387, 2002-Ohio-6660, 780 N.E.2d 241, ¶ 17; *see also Fisher*, 116 Ohio St.3d 53, 2007-Ohio-5589, 876 N.E.2d 546, at ¶ 29 (holding that

citing R.C. 3109.04(A)(2) *and* R.C. 3109.04(D) (requiring the court to determine that shared parenting is in the best interest of the children prior to approving the shared parenting plan and issuing a shared parenting order).

[7] Our review of Wyoming Statutes indicates that they "do not define 'joint custody' " and in fact, "such arrangements are not favored." *Testerman v. Testerman*, 2008 WY 112, 193 P.3d 1141, ¶ 14-15 (Wyo.).

"a shared-parenting decree grants the parents shared parenting of a child"). Based on this definition and on the Ohio Supreme Court's reasoning in *Bonfield* at ¶ 17, it would appear that the Wyoming decree granting Thomas and Mary joint custody over their children is analogous to an Ohio shared parenting decree.

**{¶24}** Similarly, it would be proper to recognize the Wyoming agreement as akin to a shared parenting plan in Ohio.[8] The Ohio Supreme Court recognized the characteristics of a shared parenting plan as follows:

> a plan includes provisions relevant to the care of a child, such as the child's living arrangements, medical care, and school placement. R.C. 3109.04(G). A plan details the implementation of the court's shared-parenting order. For example, a shared-parenting plan must list the holidays on which each parent is responsible for the child and include the amount a parent owes for child support.

*Fisher* at ¶ 30; *see also* R.C. 3109.04(G) (listing the provisions that shall be covered by a shared parenting plan). The Wyoming agreement includes provisions for visitation, medical support, child support, and residential arrangements. While school placement is not expressly mentioned in the Wyoming agreement and child support is not within the jurisdiction of Ohio, we see no reason to find these deficiencies controlling, where both parties, as well as the trial court, treated it like a shared parenting plan. To the extent that either party feels prejudiced by this conclusion, we note that on appeal both parties

---

[8] It appears that Wyoming Statutes do not mention a parenting plan. *Testerman* at ¶ 11 (recognizing that "there is no mention of a 'parenting plan' or 'parenting time' " in the Wyoming Statutes and that the Wyoming district court's use of such terms in a Wyoming case was based on Arizona law).

continue to assert their positions under the assumption that the Wyoming agreement was a shared parenting plan.

**{¶25}** Therefore, we hold that under the specific facts at issue, the Wyoming parenting decree should be treated like a shared parenting decree that includes a shared parenting plan for the purpose of resolving this case.

> *E.    The Trial Court's Choice of Procedure to Terminate the Wyoming Shared Parenting Decree*

**{¶26}** Mary asserts that the trial court erred when it applied R.C. 3109.04(E)(2)(c) instead of R.C. 3109.04(E)(1)(a) to this case.  Although she does not dispute that the Wyoming decree was a shared parenting decree, she suggests that the instant case required review under the standard for modification rather than termination of a shared parenting decree.  Mary relies on our prior recognition that in some situations, "a trial court's action 'terminating' a shared parenting plan that effectively results in 'a modification of the designation of residential parent and legal custodian of a child' may require a two-step analysis." *Drees*, 3d Dist. Mercer No. 10-13-04, 2013-Ohio-5197, at ¶ 14, quoting *Fisher,* 116 Ohio St.3d 53, 2007-Ohio-5589, 876 N.E.2d 546, at ¶ 37.

**{¶27}** In *Drees*, we distinguished the *Fisher* reclassification of the trial court's action and pointed out the specific circumstances that caused that unique situation.  We noted that in *Fisher*, the parties did not move to terminate the shared parenting plan, but only to change the designation of residential parent and legal custodian.  *Id.*; *see Fisher v. Hasenjager*, 3d Dist. No. 10-05-14, 168 Ohio

- 16 -

App.3d 321, 2006-Ohio-4190, 859 N.E.2d 1022, ¶ 24 (recognizing that both parents "actually moved to be designated the sole residential parent and legal custodian of Demetra, not to terminate the shared-parenting plan"). The trial court attempted to modify the shared parenting by changing the designation of the residential parent and legal custodian of the child, but leaving "all other orders not in conflict with the [modifications it made] in full force and effect." *Drees* at ¶ 14, fn. 4. We recognized that this action did not fit within a termination provision of R.C. 3109.04(E)(2)(c), because termination requires that the trial court issue a new decree " 'as if no decree for shared parenting had been granted and as if no request for shared parenting ever had been made .' " *Id.* at ¶ 14, quoting R.C. 3109.04(E)(2)(d). Therefore, the trial court's action in *Fisher* had to be reclassified as an attempt to *modify* the shared parenting decree and was reviewed under R.C. 3109.04(E)(1)(a). *Id.*

{¶28} Like *Drees*, this case is distinguishable from *Fisher*. The trial court herein did terminate the entire shared parenting decree[9] and did not preserve any

---

[9] While the trial court's order states that it is terminating the shared parenting *plan*, a review of the entire document makes it apparent that the order effectively terminated the parenting *decree*. (*Compare* R. at 170, at 8, ¶ 1 ("The existing shared parenting plan is terminated."), *with id.* at 8 ("this court finds that the previous shared parenting order/plan should be terminated")). As explained in Part (C) above, a "plan" is statutorily different from a "decree." *Fisher* at ¶ 29. Therefore, the trial court's order should state that the *decree* is terminated. There is no division in R.C. 3109.04(E) that provides for termination of a shared parenting plan without terminating the shared parenting decree. Although we feel the need to clarify the use of proper statutory terminology, we recognize that it has no practical effect on the action taken by the trial court, which was termination of the entire parenting decree.

part of the prior Wyoming agreement.[10]  The trial court made a new designation for residential parent and legal custodian for each of the children and issued a new visitation schedule.  Despite the fact that Thomas asked for alternative remedies: either termination or modification, there is no confusion as to what action the trial court took.  Therefore, the trial court did not err in reviewing the case under the provision for termination of shared parenting in R.C. 3109.04(E)(2)(c).

{¶29} With this conclusion, we overrule the first assignment of error.

### Second and Fourth Assignments of Error—Alleged Errors in Applying R.C. 3109.04(E)(1)(a)

{¶30} In the second and fourth assignments of error, Mary alleges that the statutory factors for modification under R.C. 3109.04(E)(1)(a) were not satisfied. But as we determined above, R.C. 3109.04(E)(1)(a) was not applicable to this case, because the trial court terminated the decree under the standard of R.C. 3109.04(E)(2)(c).  Therefore, it was not necessary to find the factors of R.C. 3109.04(E)(1)(a) satisfied in order to resolve the case.  For this reason, the second and fourth assignments of error lack merit and are overruled.

### Third Assignment of Error—Termination of Shared Parenting and the New Parenting Decree

{¶31} In this assignment of error Mary challenges the trial court's decision to change the prior parenting arrangement.  She claims that the shared parenting

---

[10] The child support issues have been retained by the State of Wyoming and were not even reviewed by the trial court.  This does not mean, however, that any part of the Wyoming decree has been preserved by the trial court.

decree should have remained in place and contests the trial court's decision to designate Thomas as the residential parent and legal custodian of C.F.

*A.      The Trial Court's Decision to Terminate Shared Parenting*

**{¶32}** As explained in our summary of standards in the first assignment of error, R.C. 3109.04(E)(2)(c) allows the trial court to terminate a shared parenting decree, and the procedure depends upon the method in which the original shared parenting plan was approved.  In particular, this division states that

- if the original shared parenting plan was filed jointly by both parents and approved under R.C. 3109.04(D)(1)(a)(i), then the trial court can terminate the prior final shared parenting decree that includes such a plan "*upon the request of one or both of the parents* or whenever it determines that shared parenting is not in the best interest of the children";

- if the original shared parenting plan was filed by one parent, or if each parent filed a separate plan and the trial court approved the plan under R.C. 3109.04(D)(1)(a)(ii) or (iii), then the trial court can terminate the plan only if it determines "that shared parenting is not in the best interest of the children." R.C. 3109.04(E)(2)(c).

**{¶33}** As can be seen, the statutory language of R.C. 3109.04(E)(2)(c) places a lot of weight on whether the original shared parenting plan was agreed

upon by both parents or by one parent only.[11] If both parties agreed upon the shared parenting plan, a mere request by one or both of the parents is a sufficient basis for the trial court's termination of a prior final shared parenting decree, even without the finding that shared parenting is not in the child's best interest. *See id.*; *Drees*, 3d Dist. Mercer No. 10-13-04, 2013-Ohio-5197, at ¶ 11, fn. 2; *see also Fisher*, 2007-Ohio-5589, ¶ 38, 56, 116 Ohio St.3d 53, 876 N.E.2d 546 (Pfeifer, J ., dissenting) ("That statute allows a court to terminate a final shared-parenting decree merely upon the request of one or both of the parents * * * such a request is sufficient for termination under R.C. 3109.04(E)(2)(c)."); *In re J.L.F.*, 8th Dist. Cuyahoga No. 97405, 2012-Ohio-1748, ¶ 4 ("R.C.3109.04(E)(2)(c) * * * allows a court to terminate a final shared-parenting decree merely upon the request of one or both of the parents."); *Tomaszewski v. Tomaszewski*, 8th Dist. Cuyahoga No. 86976, 2006-Ohio-3357, ¶ 10 ("Pursuant to R.C. 3109.04(E)(2)(c), a domestic relations court may terminate a shared parenting order either upon the motion of either parent or simply whenever the court determines that shared parenting is no longer in the best interest of the children.").

{¶34} Here, both parents agreed to the original shared parenting plan. Therefore, under the statutory language, the trial court could terminate the shared

---

[11] While the language also talks about the plan being approved under the specified subdivision of R.C. 3109.04(D)(1)(a), we are mindful of the fact that the Wyoming parenting plan did not get approved under any provision of the Ohio Statute. We are also mindful of the fact that the parties chose to litigate this case under the statutory provisions that are applicable to a shared parenting decree with a shared parenting plan, and of the mandate to promote uniformity of laws included in R.C. 3127.51. Therefore, we treat the Wyoming agreement between the parties as equivalent to a shared parenting plan approved under one of the subdivisions of R.C. 3109.04(D)(1)(a).

parenting decree "upon the request of one or both of the parents," without any additional findings. R.C. 3109.04(E)(2)(c). One of the parents, Thomas, requested termination of the decree, and the trial court could thus terminate the decree upon his request alone. Nothing more was needed under the language of R.C. 3109.04(E)(2)(c). Therefore, the trial court did not err in terminating the shared parenting decree upon Thomas's request in this case.

*B.    Designating Thomas as the Residential Parent and Legal Custodian of C.F.*

**{¶35}** Having decided that termination of the Wyoming parenting decree was proper, we evaluate the action that the trial court took upon termination, which resulted in designating Thomas as the residential parent and legal custodian of C.F. The statute directs that "[a]fter termination, the court issues a modified decree allocating parental rights 'as if no decree for shared parenting had been granted and as if no request for shared parenting ever had been made.' " *Drees*, 3d Dist. Mercer No. 10-13-04, 2013-Ohio-5197, at ¶ 12, quoting *Curtis v. Curtis*, 2d Dist. Montgomery No. 25211, 2012-Ohio-4855, ¶ 7, *and* R.C. 3109.04(E)(2)(d). In issuing this "modified decree," the trial court is required to consider "the standards applicable under divisions (A), (B), and (C) of this section." R.C. 3109.04(E)(2)(d). These divisions direct the trial court to make decisions that are in the best interest of the child.

**{¶36}** The factors that the trial court must consider when determining the best interest of the child are:

(a) The wishes of the child's parents regarding the child's care;

(b) If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;

(c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;

(d) The child's adjustment to the child's home, school, and community;

(e) The mental and physical health of all persons involved in the situation;

(f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;

(g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;

(h) Whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether either parent, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of an adjudication; whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to a violation of section 2919.25 of the Revised Code or a sexually oriented offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding; whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any offense involving a victim who at the time of the commission of the offense was a member of the family or

> household that is the subject of the current proceeding and caused physical harm to the victim in the commission of the offense; and whether there is reason to believe that either parent has acted in a manner resulting in a child being an abused child or a neglected child;
>
> (i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;
>
> (j) Whether either parent has established a residence, or is planning to establish a residence, outside this state.

R.C. 3109.04(F)(1). Any other "relevant factors" shall be considered as well. *Id.*; *Drees* at ¶ 19.

{¶37} In this case, the trial court reviewed each of the factors of R.C. 3109.04(F)(1) and found that almost all of them were "equally balanced." (R. at 170, at 8.) It then focused on the wishes of C.F. (factor (b)), finding that "the child is mature for his age and has expressed good, valid, and sufficient reasons to be placed with his father." (*Id.*) This single factor was determinative of the outcome of the case. Mary agrees that many factors were equally balanced, but she specifically points to factors (c), (d), and (j), asserting that they should have weighed against designating Thomas as the residential parent and legal custodian of C.F. She also claims that the trial court put too much weight on C.F.'s wishes.

{¶38} The trial court's determination of what is in the best interest of the child will not be reversed absent an abuse of discretion. *Lowery v. Ridgeway*, 3d Dist. Hancock No. 5-15-20, 2015-Ohio-5051, ¶ 36. This standard requires that the

trial court's reasoning not be disturbed unless it was "unreasonable, arbitrary or unconscionable," because the trial judge is best equipped to determine and weigh the credibility of the proffered testimony. *Davis v. Flickinger*, 77 Ohio St. 3d 415, 416, 418, 674 N.E.2d 1159 (1997); *Blakemore v. Blakemore*, 5 Ohio St. 3d 217, 219, 450 N.E.2d 1140 (1983). Therefore, under the abuse of discretion standard, we cannot reverse the trial court simply because we may hold a different opinion as to the determination of the issues. *Huffman v. Hair Surgeon, Inc.*, 19 Ohio St.3d 83, 87, 482 N.E.2d 1248 (1985); *Conway v. Dravenstott*, 3d Dist. Crawford No. 3-07-05, 2007-Ohio-4933, ¶ 12; *In re Sullivan*, 11th Dist. No. 2005-G-2641, 167 Ohio App.3d 458, 462, 2006-Ohio-3206, 855 N.E.2d 554, 557, ¶ 12 ("An abuse of discretion connotes more than a difference in opinion in the application of the law to the facts.").

**{¶39}** With this standard in mind we review the trial court's analysis of the factors challenged by Mary.

*Factor (c)—Interaction with Parents, Siblings, and Others*

**{¶40}** When evaluating factor (c), the trial court found that

[C.F.] has family and friends in Ohio and would have family, step-family, and friends in Washington. The evidence indicates that [C.F.] has good relations with his stepmother and stepsiblings in Washington. Although there is an older child of the stepmother who has had criminal and drug issues, according to the evidence that person resides outside the home and a significant distance away and is not part of the regular family involvement.

- 24 -

(R. at 170, at 6-7.)   Mary points out that C.F. has a close relationship with his sister and his move to Washington would separate the siblings.   She further asserts that the fact that Thomas had left his family and moved to the state of Washington after their divorce, should be used in the best interest analysis.

{¶41} Mary cites *Erwin v. Erwin*, 3d Dist. Union No. 14-05-45, 2006-Ohio-2661, in support of her position that these factors should have weighed against granting Thomas's request.   In *Erwin*, the trial court denied mother's request for shared parenting.   In reviewing the evidence, we noted that mother and father disagreed on the way to discipline the children; mother left the children with father when she went to live with her boyfriend whom she had only known for one night; mother introduced the children to her boyfriend the same week that she moved in with him; and father did not have mother's address for six months after she had left.   *Id.* at ¶ 27.   Under the abuse of discretion review, we afforded deference to the trial court's decision, which denied the mother's request for shared parenting of the children under the totality of the circumstances analysis.   *Id.* at ¶ 16-29.   We noted that mother's "abrupt abandonment of the children had an adverse effect on the children's best interest."   *Id.* at ¶ 27.

{¶42} Similarly, in this case we must afford deference to the trial court's analysis of the facts of this case, which are distinguishable from *Erwin*.   Here, there was no evidence of Thomas abruptly abandoning the children.   Thomas did not move to the state of Washington until after the parties' divorce became final,

and he continued his relationship with the children after that time. (Tr. of Proceedings, March 30, 2015, at 111.) Unlike in *Erwin*, there was no evidence here that Thomas's move to Washington had an adverse effect on C.F.'s best interest. Instead, the evidence showed that C.F. enjoyed the new opportunities to which he was exposed in the state of Washington.

{¶43} The record further shows that the trial court did not ignore C.F.'s relationship with his sister, recognizing that C.F. had "family and friends in Ohio and would have family, step-family, and friends in Washington." (R. at 170, at 6.) The magistrate of the trial court reasoned that although he "does not generally like to 'split up' children," there were many advantages to C.F. moving to Washington, including being able to live "with a positive male role model." (R. at 94, at 11.) Based on the foregoing, we find no abuse of discretion in the trial court's analysis of this factor.

*Factor (d)— Adjustment to the Home, School, and Community*

{¶44} The trial court recognized that C.F. was "well adjusted to his current home, school and community in Ohio," but it also recognized "that when living in Washington during the summer he has established friends and relationships." (R. at 170, at 7.) The trial court was conscious of the fact that "there will certainly be an adjustment necessary for him moving into a new school," but it found C.F. to be "well situated to handle that." (*Id.*) Mary does not dispute these findings, but she asks us to give more weight to the positive influence of the Ohio activities

upon C.F. In our review under the abuse of discretion standard, we cannot do that. *See Bechtol v. Bechtol*, 49 Ohio St.3d 21, 550 N.E.2d 178 (1990), syllabus (holding that "[w]here an award of custody is supported by a substantial amount of credible and competent evidence, such an award will not be reversed as being against the weight of the evidence by a reviewing court).

*Factor (j)—Move Out-of-State*

{¶45} As it pertains to factor (j), the trial court correctly noted that both parents moved from Wyoming, where the original parenting decree was entered. The trial court placed no significance on that factor. (R. at 170, at 16.) Mary claims that because Thomas moved first, it is against the best interest of C.F. to allow him to live with Thomas. This argument is repetitive of the claim made above, which we analyzed under factor (c). There is no evidence that the trial court abused its discretion in analyzing this factor.

*Factor (b)—C.F.'s Wishes*

{¶46} Lastly, with factor (b), Mary correctly points out that the child's wishes should be considered as one of many factors in the best interest determination. *See In Matter of Reid*, 3d Dist. Paulding No. 11-98-3, 1998 WL 409115, *2 (July 10, 1998) ("children's wishes are not controlling upon the court, but are only one among several factors a court considers when determining what is in the children's best interests"); *Burks v. Burks*, 3d Dist. Wyandot No. 16-96-2, 1996 WL 518111, *2 (Sept. 12, 1996) ("the interview of the children is not

conclusive but is only one of the several relevant factors to be considered under R.C. 3109.04(F)(1)"). Here, the trial court did consider all factors and correctly determined that they were equally balanced. Therefore, the trial court had to make its allocation of parental rights and responsibilities based on the one factor that was not in balance.[12]

**{¶47}** We recognize that "a child's wishes are often transitory" and "[n]o court can permit a child constantly to effect change in his or her residential parent based on a simple change of mind in that regard." *Butland v. Butland*, 10th Dist. Franklin No. 95APF09-1151, 1996 WL 362038, *4 (June 27, 1996). Instead, "a trial court should evaluate a child's wishes and concerns regarding the allocation of parental rights and responsibilities from the standpoint of their depth, sincerity, and the extent they reflect changed circumstances within the parent-child relationship or relationship between the parties." *Id.*

**{¶48}** Here, the trial court noted that C.F.'s wishes and desires expressed during the in-camera interview appeared to be "well considered." (R. at 170, at 6.) The magistrate and both parents agreed that C.F. was "bright, intelligent, articulate and mature for his age." (*Id.*) C.F.'s desire to live with Thomas was not "a whim," and it was not motivated by any disagreement with mom. (*Id.*) Rather, C.F. had been considering and discussing the possibility of living with his father

---

[12] This conclusion does not contradict our prior holding that "[a] child's wishes regarding custody standing alone is not enough to constitute a change in circumstances." *McLaughlin v. McLaughlin-Breznenick*, 3d Dist. Logan No. 8-06-06, 2007-Ohio-1087, ¶ 28. The threshold for a change in circumstances is different than a finding of what is in the best interest of the child.

for at least a couple of years. (*Id.*) His wishes were motivated by his belief that he would have a better violin opportunity, an opportunity to participate in a creative theater camp, and more educational opportunities. (R. at 94, at 9.) He also indicated that he needed a "guy" in the house. (*Id.*) Based on these findings, which are supported by the record, we find no abuse of discretion in the trial court's finding that C.F.'s wishes align with his best interest, where both parents were found to be "suitable parents" and the "primary objection" that Mary had to the placement of C.F. with Thomas was "her desire to keep the family together." (*Id.* at 5-6.)

{¶49} The standard of review requires us to give deference to the trial court's resolution of the issues and to the "determination made between competing considerations." *Huffman*, 19 Ohio St.3d at 87, 482 N.E.2d 1248; *Conway*, 3d Dist. Crawford No. 3-07-05, 2007-Ohio-4933, at ¶ 12. Under this standard we hold that the trial court did not abuse its discretion in analyzing the factors of R.C. 3109.05(F)(1) and determining that C.F.'s move to Washington to live with his father would be in his best interest. Accordingly, the trial court did not err in designating Thomas as the residential parent and legal custodian of C.F. after terminating the prior shared parenting decree. With this conclusion, we overrule the third assignment of error.

***Fifth Assignment of Error—Findings of Fact and Conclusions of Law***

{¶50} Mary repeats her complaint made in the trial court, alleging that the magistrate's decision was not specific enough to support the finding in favor of a change of custody. She thus asserts that the trial court erred in denying her request for findings of fact and conclusions of law in accordance with Civ.R. 53(D)(3)(a)(ii). This rule states that

> [s]ubject to the terms of the relevant reference, a magistrate's decision may be general unless findings of fact and conclusions of law are timely requested by a party or otherwise required by law. A request for findings of fact and conclusions of law shall be made before the entry of a magistrate's decision or within seven days after the filing of a magistrate's decision. If a request for findings of fact and conclusions of law is timely made, the magistrate may require any or all of the parties to submit proposed findings of fact and conclusions of law.

Civ. R. 53.

{¶51} Mary's request filed under this rule was properly denied because the magistrate's decision in this case was not a "general" decision under the rule. Indeed, the thirteen-page decision consisted of fourteen enumerated paragraphs. Each of these paragraphs dealt with different findings of fact (*see, e.g.*, paragraphs 1, 5, 6, 7, 8, 9, 10, 11), legal standards (*see, e.g.*, paragraphs 2, 3, 4), and conclusions of law (*see, e.g.*, paragraphs 10, 12). "Findings of fact and conclusions of law have a twofold purpose: they explain the factual and legal rationale for the trial court's decision and, as a consequence, help make meaningful appellate review possible." *Brammer v. Brammer*, 3d Dist. Marion

No. 9-12-57, 2013-Ohio-2843, ¶ 42. Both objectives are satisfied by the magistrate's decision.

{¶52} While Mary alleged that the magistrate's decision did not sufficiently explain the magistrate's findings, we have previously held:

> It is not realistic to expect a trial court to include a written analysis of each and every factual bit of information that was presented during a three-day hearing. Merely because the trial court chose to summarize its findings, and only list *some* of the pertinent facts that were instrumental in its decision, does not mean that it did not consider and weigh all of the evidence before it.

*Brammer* at ¶ 43.

{¶53} Based on the foregoing, we hold that the trial court did not err in denying Mary's request for findings of fact and conclusions of law. We thus overrule the fifth assignment of error.

### V. Conclusion

{¶54} Having reviewed the arguments, the briefs, and the record in this case, we find no error prejudicial to Appellant in the particulars assigned and argued. The judgment of the Common Pleas Court of Shelby County, Ohio is therefore affirmed.

*Judgment Affirmed*

**PRESTON, J., concurs**

**ROGERS, J., concurs in Judgment Only.**

**/hls**

- 31 -