[Cite as *Reese v. Whitsett*, 2017-Ohio-2798.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## LOGAN COUNTY

SEAN P. REESE,

    PLAINTIFF-APPELLEE,                CASE NO.  8-16-16

    v.

KAITLYN JO WHITSETT,              O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from Logan County Common Pleas Court
Juvenile Division
Trial Court No. 14-AD-85

Judgment Affirmed

Date of Decision:   May 15, 2017

APPEARANCES:

    *Douglas B. Dougherty* **for Appellant**

    *Jeffrey A. Merklin* **for Appellee**

**SHAW, J.**

{¶1} Defendant-appellant, Kaitlyn Jo Whitsett nka Overmyer ("Kaitlyn"), appeals the October 19, 2016 judgment of the Logan County Court of Common Pleas, Juvenile Division, naming plaintiff-appellee, Sean P. Reese ("Sean"), the residential parent and legal custodian of the parties' minor child. On appeal, Kaitlyn argues that the trial court improperly considered certain factors relating to her lifestyle in making its determination that it is in their child's best interest to designate Sean the residential parent.

### *Procedural History*

{¶2} On November 5, 2014, Sean filed a Complaint to Allocate Parental Rights and Responsibilities of the parties' child, H.R., who was born in 2013. Sean requested that the trial court designate him as the residential parent and legal custodian, or in the alternative, order a shared parenting plan be put into place. Sean also filed a motion for a temporary orders requesting that the trial court award him temporary custody of the child, or in the alternative, order shared parenting. Sean further sought the trial court to incorporate a temporary order "precluding [Kaitlyn] from taking the minor child out of the State of Ohio without a Court Order or Father's consent. Father has reason to believe Mother may be dating a person who lives in Ft. Wayne, Indiana." (Doc. No. 2). Kaitlyn filed an answer and

counterclaim requesting that the trial court name her the "sole custodial and residential parent" of the parties' child and also requested temporary orders consistent with her counterclaim.

**{¶3}** The matter was set for a hearing on temporary orders for February 9, 2015.

**{¶4}** On January 21, 2015, Sean filed a Motion for Emergency Order of Temporary Custody requesting the trial court grant him immediate temporary custody of the parties' child. The motion stated that the "reason for this request is that Father has been told by Mother that she plans on permanently removing the child from the State of Ohio to Ashley, Indiana, presumably to live with her boyfriend as identified in his Motion for Temporary Orders, that she has obtained new employment in Indiana, and that if Father wanted to see his son he would have to drive to Van Wert, Ohio for pick up/delivery of the child. The effective date given to Father is January 26, 2015." (Doc. No. 20).

**{¶5}** Kaitlyn filed a memorandum in opposition to Sean's Motion for Emergency Order of Temporary Custody claiming that she had been the primary caretaker of the child since his birth and that she was the sole provider for the child. She explained that she had obtained a better paying job in Indiana using her bachelor's degree which would give her and the parties' child more financial security. She further explained that she planned to give Sean visitation consistent

Case No. 8-16-16

with the local court rule.   Therefore, Kaitlyn asked the trial court to deny Sean's

Motion for Emergency Order of Temporary Custody.

{¶6} On January 29, 2015, the trial court's magistrate conducted a hearing

on Sean's Motion for Emergency Order of Temporary Custody.  Both parties were

present with counsel.  The magistrate heard testimony from Sean and his parents

and Kaitlyn and her mother.[1]   The magistrate made the following factual

determinations from the evidence presented at the hearing:

> **The parties are the parents of one minor child, namely [H.R.], born [September 2013].  Father filed the motion because Mother advised that she was planning to move to Ashley, Indiana with the parties' child.  Mother in fact moved on January 23, 2015.  She lives with her fiancé, whom she met approximately six months ago.  Her fiancé has a daughter who is 3½ years old; he is the child's primary custodian.  Mother moved to Ashley due to new employment in the area.  She had been employed with the Logan County Sheriff's Office, but wanted to put her bachelor's degree in psychology to use.  She had sought employment in central Ohio, without success.  She secured a position as a transitional care coach in Indiana; Mother will be making approximately $3.00 more per hour in this job.**
>
> **Father has had consistent, though limited, involvement in the child's life.  Long work hours have, at times, limited Plaintiff's opportunities to be with the child.  Currently, Father works a first shift, 40 hour per week job.  Mother claims that Father has anger management issues.**
>
> **Travel time between the parents' current residences is approximately two hours.**

---

[1] For reasons not apparent from the record, the transcript of this hearing, which the record indicates was extensive, was not provided on appeal.

-4-

(Doc. No. 27).

{¶7} The magistrate issued temporary orders on February 25, 2015, designating Kaitlyn the residential parent and legal custodian of the parties' child and affording Sean visitation as the parties agree, or in the event an agreement could not be reached, three of every four weekends from Friday 6:00 p.m. to Sunday 6:00 p.m. Custody exchanges were ordered to take place in Van Wert, Ohio, at a mutually agreeable location. Sean was ordered to pay child support.

{¶8} On March 6, 2015, less than two weeks after the temporary orders were issued, Kaitlyn filed a motion to modify the temporary orders requesting the trial court to modify Sean's parenting time to every other weekend from Friday 6:00 p.m. to Monday 6:00 p.m. Kaitlyn claimed that the frequent travel required by the parenting time schedule in the court's temporary orders placed a "substantial amount of stress on the child." (Doc. No. 28). Sean filed a response "strenuously" opposing Kaitlyn's motion claiming that the proposed modification would deprive him of the opportunity to develop a strong father-son relationship with H.R.

{¶9} On March 17, 2015, the magistrate issued an order overruling Kaitlyn's motion to modify Sean's parenting time stating that "the undersigned ordered that Plaintiff receive three out of four weekends with the parties' minor child in an attempt to approximate the amount of time he had spent with the child prior to Defendant's move. The undersigned believes that such a schedule is necessary to

facilitate the child's relationship with his father, which is in the best interest of the child." (Doc. No. 30).

### *Evidence Presented at the Final Hearing*

{¶10} On September 2, 2015, the case proceeded to a final hearing before the magistrate. The following was revealed from the testimony of the witnesses presented at the final hearing.[2]

### *Summary of Events Prior to the Hearing*

{¶11} Kaitlyn met Chris Overmyer, who lived in Indiana, on Tinder, an online dating website in September of 2014. Approximately a month later the two met in person and developed a romance. On or about January 24, 2015, Kaitlyn moved the parties' child to Indiana. The record indicates that she represented to the magistrate that her decision to move was primarily because she had secured a new position as a transitional care coach in Indiana and earned a higher salary. In early May 2015, Kaitlyn purchased the home where she lived with the parties' child along with Mr. Overmyer and his four-year-old child. According to Mr. Overmyer, they could not get a mortgage in both of their names due to his credit history. Therefore, Kaitlyn obtained the mortgage alone based upon her salary as a transitional care coach.

---

[2] It should be noted that the evidence at the final hearing was not meant to be duplicative of that taken at the hearing on temporary orders held eight months earlier. Accordingly, the testimony largely focused on developments since the prior hearing.

{¶12} On June 25, 2015, Kaitlyn married Mr. Overmyer. Shortly thereafter they discovered Kaitlyn was pregnant. In mid-August 2015, Kaitlyn voluntarily quit her job as a transitional care coach based upon her concerns that the position could expose her unborn child to illnesses. Consequentially, Kaitlyn intended to stay at home with H.R. and Overmyer's daughter, which alleviated the cost of having to provide for daycare. However, she stated that she had been accepted to attend a local community college and had plans to begin nursing classes online once her child in utero reached a year old.

*Sean's Position*

{¶13} Sean testified that he bought his home in Lakeview, Ohio, in Logan County when he was 19 years old. At the time of the hearing Sean was 24. H.R. has his own room in the home. Since 2014, Sean has been employed at Fire Safety Services in the neighboring town of Huntsville. He generally worked first shift during the week, 8:00 a.m. to 5:00 p.m. with some overtime, and did not work on the weekends. He explained that this job has provided him with more stable hours and since the trial court's temporary orders were issued he has been able spend three out of every four weekends with H.R and had extended parenting time with H.R. in the summer. Sean testified that he is current on his child support; specifically, that it is withheld from his paycheck.

{¶14} Most of Sean's family lives in close proximity to him. Sean's parents live three to four miles from Sean's home. Sean's sister and her two sons ages 4 and 7 also live with Sean's parents for the time being. Sean's mother, father, and sister presented testimony at the final hearing indicating that Sean and H.R. have a great father-son relationship and that H.R. is well bonded with them and his sister's children, H.R.'s cousins. Sean explained that he has a great family support system in Logan County and that if the trial court designated him residential parent and legal custodian of H.R. he would have the help and support of various family members who live nearby.

{¶15} Sean further stated that many members of Kaitlyn's family also reside in Logan County. Specifically, Kaitlyn's parents live approximately fifteen miles from Sean and her sister lives eight miles from him. Sean stated that since the temporary orders were issued, Kaitlyn had returned to Ohio to visit her family, which also enabled him to exercise his parenting time. Sean expressed that it is in H.R.'s best interest for him to be designated residential parent because of the strong family ties to Logan County, on both H.R.'s maternal and paternal sides, and the lack of family in Indiana, where Kaitlyn now resides.

*Kaitlyn's Position*

{¶16} Kaitlyn testified that since H.R.'s birth she had been his primary caretaker. She recalled that she and Sean lived together immediately after H.R.'s

birth in September 2013, but that the relationship fell apart and she moved in with her parents at the end of 2013. After their relationship ended, she and Sean arranged for Sean to see H.R. on a regular basis, which Sean consistently exercised. Prior to moving to Indiana, she worked as a correction's officer with the Logan County Sheriff's Office. She admitted that her decision to move to Indiana was partially influenced by the fact that her new paramour lived there. However, she maintained that she also moved to Indiana to pursue a higher paying position, which she admitted to voluntarily leaving seven months later.

{¶17} Kaitlyn explained that she and Mr. Overmyer discussed the financial impact of her leaving her new employment on the family budget and concluded that it was economically feasible for her to stay home with the children and for Mr. Overmyer to be the sole income provider. Kaitlyn also revealed that her former employer offered to reduce her hours to part-time, but that she declined because she wanted to spend more time with H.R. and prepare for the arrival of her new child.

{¶18} Kaitlyn acknowledged that she did not have any family living within a 100-mile radius of her in Indiana. However, she explained that in the short amount of time of her living in her new home in Indiana she had formed friendships with some of her neighbors and former co-workers and had developed a close relationship with her mother-in-law, who lives nearby. Kaitlyn's mother also provided testimony that she frequently visited Kaitlyn and H.R. and that she brought

the young children of whom Kaitlyn's mother and her husband have custody through the state foster care system. Kaitlyn's mother explained that H.R. had a good relationship with these children.

**{¶19}** Kaitlyn described the area near Ft. Wayne, Indiana where she lived with H.R., Overmyer, and his daughter as having many resources for children, good public schools, and more opportunity for her to advance in her career than in Logan County. She also noted that she frequently returned to Logan County to visit family. Kaitlyn claimed that it is in H.R.'s best interest for her to be named his residential parent and legal custodian because she had always been his primary caretaker and he had bonded well with Overmyer and his daughter. Kaitlyn further stated that "it's very hard for [H.R.] to adjust to the constant change" and suggested that modifying Sean's parenting time to every other weekend would be better for H.R. (Doc. No. 74 at 119).

**{¶20}** On September 30, 2015, the magistrate issued a decision analyzing the evidence presented at the final hearing. The magistrate considered the factors in R.C. 3109.04(F)(1) and recommended that it is in H.R.'s best interest for Sean to be designated his residential parent and legal custodian and Kaitlyn be named non-residential parent and provide child support.

**{¶21}** On March 11, 2016, Kaitlyn filed objections to the magistrate's decision asserting that his decision to designate Sean the residential parent is against

the manifest weight of the evidence and contending that the magistrate improperly considered her financial situation as a factor in determining the child's best interest. Sean filed a response to Kaitlyn's objections revealing that Kaitlyn had since moved back to Logan County, secured new employment locally, and was "now involved in active domestic litigation in Indiana and the custody of her second child is in doubt."[3] (Doc. No. 52).

{¶22} On September 21, 2016, the trial court overruled Kaitlyn's objections to the magistrate's decision and adopted the magistrate's findings and recommendations.

{¶23} On October 19, 2016, the trial court issued a judgment entry naming Sean H.R.'s residential parent and legal custodian, setting forth Kaitlyn's parenting time as non-residential parent, and establishing Kaitlyn's child support obligation.

{¶24} Kaitlyn filed this appeal, asserting the following assignments of error.

**ASSIGNMENT OF ERROR NO. 1**

**IN DETERMINING THE BEST INTEREST OF THE CHILD, THE TRIAL COURT ERRED WHEN IT IMPROPERLY CONSIDERED IRRELEVANT LIFESTYLE CHOICES MADE BY THE MOTHER.**

---

[3] We note that any information in this case regarding pending domestic relations litigation involving Kaitlyn and Mr. Overmyer in Indiana arose after the issuance of the magistrate's decision on the allocation of the parties' parental rights and responsibilities and therefore did not factor into the trial court's decision on the matter. Accordingly, we also will not consider any information in the record pertaining to this unrelated matter on appeal.

**ASSIGNMENT OF ERROR NO. 2**

**IN DETERMINING THE BEST INTEREST OF THE CHILD, THE TRIAL COURT ERRED WHEN IT INFERRED, FROM THE MOTHER'S LIFESTYLE CHOICES, THAT THE MOTHER MADE BAD DECISIONS REGARDING THE CHILD IN THE PAST.**

**ASSIGNMENT OF ERROR NO. 3**

**IN DETERMINING THE BEST INTEREST OF THE CHILD, THE TRIAL COURT ERRED WHEN IT CONSIDERED THAT IT WAS POSSIBLE THAT MOTHER WOULD MAKE BAD DECISIONS REGARDING THE CHILD IN THE FUTURE.**

**ASSIGNMENT OF ERROR NO. 4**

**IN DETERMINING THE BEST INTEREST OF THE CHILD, THE TRIAL COURT ERRED WHEN IT CONCLUDED THAT THE FATHER WAS THE MORE STABLE PARENT.**

**{¶25}** We elect to address Kaitlyn's assignments of error together due to the fact that they each challenge the trial court's determination that it is in H.R.'s best interest to designate Sean as his residential parent and legal custodian.

**{¶26}** The juvenile court's determination of what is in the best interest of a child will not be reversed absent an abuse of discretion. *Sayre v. Furgeson*, 3d Dist. Shelby No. 17-15-16, 2016-Ohio-3500, ¶ 38. An abuse of discretion implies that the court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St .3d 217, 219 (1983). "A decision is unreasonable if there is no sound reasoning process that would support that decision." *AAAA Enterprises, Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157,

161 (1990). "This highly deferential standard of review rests on the premise that the trial judge is in the best position to determine the credibility of witnesses because he or she is able to observe their demeanor, gestures, and attitude." *Rarden v. Rarden*, 12th Dist. Warren No. CA2013-06-054, 2013-Ohio-4985, ¶ 10.

{¶27} At the outset we note Kaitlyn does not argue that the trial court failed to consider the statutory factors contained in R.C. 3109.04(F)(1) in determining the child's best interests and allocating the parties' parental rights and responsibilities. Indeed, the magistrate's decision, which was incorporated into the trial court's judgment entry, reflects that each relevant statutory factor was considered as part of the determination to designate Sean the residential parent.

{¶28} Rather, on appeal Kaitlyn claims that the trial court also improperly considered several non-statutory factors in determining H.R.'s best interest. She contends that the trial court repeatedly called into question her decision making and judgment by pointing out the number of crucial life decisions she made in a very short period of time. She also highlights the trial court's finding that Sean is the more stable parent when it came to housing, employment, and relationships. Thus, Kaitlyn asserts that the trial court improperly considered her financial condition and lifestyle decisions when determining what is in H.R.'s best interest. She further argues that the trial court failed to address how these factors have had a direct adverse impact on H.R.

-13-

{¶29} In this case, the record demonstrates that the trial court did not simply focus on Kaitlyn's lifestyle choices. The record reflects that the trial court did consider the accelerated timeframe in which Kaitlyn chose to uproot H.R. from not only Sean and his family, but also from her own family, to begin a life with someone whom she had just met, and just two months after Sean initiated this case. However, the record demonstrates that the trial court gave considerably more weight to the representations that Kaitlyn made to the magistrate, which appeared to form the foundation of his decision to name her H.R.'s residential parent in the temporary orders. In particular, this included Kaitlyn's representation to the magistrate that while she may be moving from a close-knit extended family, she would thereby be able to provide increased financial stability to support H.R. due to new employment secured as a result of the move all of which would not have been available had she stayed in Logan County.

{¶30} In his decision issued after the final hearing, eight months later, the magistrate expressed concern with Kaitlyn's subsequent lack of commitment to follow through with those plans despite her prior assurances at the hearing on temporary orders, which ultimately placed her, and H.R., in a less certain financial position and now with significantly less family support. Specifically, the magistrate stated in his decision "[t]he undersigned felt at the time that the temporary orders best served the child because they maintained Mother as primary caregiver while

still affording Father approximately the same amount of time he previously had with [H.R.], albeit in more condensed periods.  In short, the hope was to afford Mother the benefit of any doubt in an attempt to maintain something akin to the status quo. * * * However, Mother's actions since that time have proven the undersigned wrong.  Mother quit her job after just seven months.  Thus, one of the undersigned's main reasons for giving Mother the benefit of the doubt is gone."  (Doc. No. 139 at 7-8).

{¶31} Even though the trial court may have expressed concern that Kaitlyn's "rash decisions raise a number of questions about her judgment and the potential impact on [H.R.]," the record indicates that it was Kaitlyn's conduct demonstrating a lack of commitment to the career and financial plans, which she previously assured the magistrate were the primary reasons for her removing H.R. from his extended family, that undermined the magistrate's confidence in not only her judgment, but also in her ability to be candid and straightforward with the court moving forward. (Doc. No. 139 at 8).  Moreover, the record reveals that the trial court did not simply base its decision on Kaitlyn's decision making and judgment.  Rather, the trial court and magistrate cited many other statutory factors in reaching a decision, which are supported by the evidence in the record, including the significant ties H.R. has with his extended family in Logan County and the support they provide *both* parents in raising H.R.

**{¶32}** We also conclude that the magistrate and the trial court had the discretion to find that Sean would provide the parties' child with greater stability than Kaitlyn. "Assessing the relative stability of the parties is a matter particularly well suited to resolution by the trier of fact." *Caron v. Caron*, 2d Dist. Greene No. 2016-CA-27, 2017-Ohio-1070, ¶ 14. It is clear from the record that both parties have their respective strengths and weaknesses, and that both parties have been good parents, a fact recognized by the magistrate. Nevertheless, the magistrate and the trial court examined the evidence and assessed the parties' relative situations and location of family support and concluded that, between the two of them, Sean was best suited to provide a stable environment for their child.

**{¶33}** In sum, even though the trial court considered aspects of Kaitlyn's decision making and judgment, the record establishes that this was just one of a multitude of factors that it considered and was not the sole basis of the trial court's decision. Moreover, despite Kaitlyn's characterizations on appeal, her arguments simply pertain to credibility determinations of the magistrate and trial court with regard to Kaitlyn, and not any specific errors of law. As evidenced by the magistrate's decision and its judgment entry overruling Kaitlyn's objections, the trial court considered the relevant statutory best interest factors in addition to other factors it found significant in granting Sean's motion to be designated residential parent and, as we noted above, the trial court is in the best position to observe

witnesses, weigh evidence, and evaluate testimony, and this Court will not reverse a trial court's decision based upon a difference of opinion on the credibility of witnesses or evidence.

{¶34} Accordingly, Kaitlyn's first, second, third, and fourth assignments of error are overruled.

{¶35} For all these reasons the assignments of error are overruled and the judgment is affirmed.

*Judgment Affirmed*

**WILLAMOWSKI and ZIMMERMAN, J.J., concur.**

**/jlr**