[Cite as *Redmond v. Wade*, 2017-Ohio-2877.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
LAWRENCE COUNTY

KERI B. REDMOND, fka WADE, :

    Plaintiff-Appellant, : Case No. 16CA16

    vs. :

ADAM R. WADE, : DECISION AND JUDGMENT ENTRY

    Defendant-Appellee. :

_____

APPEARANCES:

Keri Redmond Paton, Louisville, Kentucky, pro se appellant

Mark K. McCown, Ironton, Ohio, for appellee

_____

CIVIL CASE FROM COMMON PLEAS COURT
DATE JOURNALIZED: 5-12-17
ABELE, J.

{¶ 1} This is an appeal from a Lawrence County Common Pleas Court judgment that (1) terminated a shared parenting decree, (2) designated Adam R. Wade, defendant below and appellee herein, the residential parent of the parties' seven-year-old child, and (3) allocated parenting time to Keri Redmond fka Wade, plaintiff below and appellant herein. Appellant assigns the following errors for review:

    FIRST ASSIGNMENT OF ERROR:

    "JUDGE COOPER FAILED TO PERFORM AN INDEPENDENT
    REVIEW OF THE MAGISTRATE'S DECISION, WHICH IS AN
    ABUSE OF DISCRETION. NOT PERFORMING AN
    INDEPENDENT REVIEW VIOLATES CIVIL RULE

53(D)(4)(d)."

SECOND ASSIGNMENT OF ERROR:

"NEITHER JUDGE COOPER NOR MAGISTRATE MCWHORTER REQUIRED THE PARENTS TO VERIFY THEIR INCOME THROUGH SUPPORTING DOCUMENTATION. R.C. 3119.05(A) REQUIRES THAT THE CHILD SUPPORT CALCULATION BE CALCULATED THROUGH VERIFIED DOCUMENTS. MAGISTRATE MCWHORTER AND JUDGE COOPER WERE BIAS[ED] AND CLEARLY FAVORED THE FATHER OVER THE MOTHER IS A VIOLATION OF THE MOTHER'S 14TH CONSTITUTIONAL AMENDMENT AND DUE PROCESS [OF] LAW."

THIRD ASSIGNMENT OF ERROR:

"TERMINATING THE SHARED PARENTING AGREEMENT USING 3109.04(E)(2)(c) WHEN IT SHOULD HAVE USED 3109.04(E)(1)(a) [SIC]. THE TRIAL COURT HAD NOT TERMINATED THE PARTIES' SHARED-PARENTING PLAN BUT INSTEAD HAD MODIFIED THE PLAN. R.C. 3109.04(E)(1)(a) CONTROLS WHEN A COURT MODIFIES AN ORDER DESIGNATING THE RESIDENTIAL PARENT AND LEGAL CUSTODIAN."

FOURTH ASSIGNMENT OF ERROR:

"AN ABUSE OF DISCRETION NOT RECOGNIZING THE MOTHER AS THE SOLE RESIDENTIAL PARENT AND FAILED TO ACKNOWLEDGE THAT THE DECREE IS NOT SHARED PARENTING [SIC]. PLAIN ERROR OF LAW R.C. 3109.04 ALSO DOES NOT EXPRESSLY DEFINE 'RESIDENTIAL PARENT' AND 'LEGAL CUSTODIAN.' [SIC] HOWEVER, SUBSECTION (A)(1) STATES THAT IF ONE PARENT IS ALLOCATED THE PRIMARY PARENTAL RIGHTS AND RESPONSIBILITIES FOR THE CARE OF A CHILD, THAT PARENT IS DESIGNATED THE RESIDENTIAL PARENT AND LEGAL CUSTODIAN."

FIFTH ASSIGNMENT OF ERROR:

"THE TRIAL COURT ERRORED [SIC] BY STATING IN THE FINAL APPEALABLE ORDER THAT BOTH PARTIES WISHED TO 'TERMINATE' THE SHARED PARENTING PLAN AS AN ABUSE OF DISCRETION AND AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND THE EVIDENCE WAS MIS-QUOTED AND CONSTRUED BY THE FATHER."[1]

SIXTH ASSIGNMENT OF ERROR:

"THE TRIAL COURT WAS BIAS[ED] AGAINST THE MOTHER AND FAILED TO RECOGNIZE THAT BOTH PARENTS FILED MOTIONS TO CHANGE THE PARENTING TIME OF THE CHILD. * * * * THERE IS AN ABUSE OF

---

[1] Appellant's fifth assignment of error continues for an additional eighteen lines and appears to conflate the "assignments of error" with the "statement of the issues." App.R. 16(A)(3) and (4) require an appellant's brief to set forth an assignment of error and a statement of the issues. *Accord* Painter and Pollis, Ohio Appellate Practice (2016 Ed.), Section 5:13 (explaining that the "'statement of issues' should identify these key issues separately for each assignment of error"); *see* App.R. 16 (1992 Staff Notes) (stating that the statement of issues "logically follow the assignments of error"). "[T]he assignments of error are purely for the purpose of pinpointing the source of the alleged error." Painter and Pollis, Section 5:13. "The 'Assignments of Error' should designate specific rulings which the appellant challenges on appeal. They may dispute the final judgment itself or other procedural events in the trial court." *N. Coast Cookies, Inc. v. Sweet Temptations, Inc.*, 16 Ohio App.3d 342, 343, 476 N.E.2d 388 (8th Dist.1984); *accord Davis v. Byers Volvo*, 4th Dist. Pike No. 11CA817, 2012-Ohio-882, 2012 WL 691757, fn. 1, citing Painter and Dennis, Ohio Appellate Practice (2007 Ed.), Section 1.45 (stating that "the assignments of error * * * set forth the rulings of the trial court * * * contended to be erroneous"); *see also* App.R. Rule 16 (1992 staff notes) (setting forth an example of a proper assignment of error as, "The trial court erred in overruling defendant-appellant's motion for directed verdict. (Tr. _____)").

On the other hand, "the statement of the issues gives the appellant an opportunity to begin to explain, through advocacy, how the trial court erred." Painter and Pollis, Section 5:13. "The 'Statement of Issues' should express one or more legal grounds to contest the procedural actions challenged by the assigned errors. They may subdivide questions presented by individual assigned errors, or they may be substantially equivalent to the assigned errors." *N. Coast Cookies, Inc.*, 16 Ohio App.3d at 343–44; *accord* App.R. 16 (1992 Staff Notes) (explaining that "[t]he issues presented are the issues raised by the assignments of error").

Appellant's failure to comply with the Appellate Rules allows us to disregard the assignment of error or to dismiss the appeal. *Hart v. Hudson*, 4th Dist. Pickaway No. 10CA19, 2010-Ohio-5954, 2010 WL 4949654, ¶11; *Salisbury v. Smouse*, 4th Dist. Pike No. 05CA737, 2005-Ohio-5733, 2005 WL 2812754, ¶11-12 (noting that appellate court has "discretion to dismiss an appeal for a party's failure to comply with the Appellate Rules"). "However, 'it is a fundamental tenet of judicial review in Ohio that courts should decide cases on the merits.'" *Salisbury* at ¶12, quoting *DeHart v. Aetna Life Ins. Co.,* 69 Ohio St.2d 189, 192, 431 N.E.2d 644 (1982), citing *Cobb v. Cobb*, 62 Ohio St.2d 124, 403 N.E.2d 991 (1980). In the interests of justice, therefore, we will consider appellant's assignment of error.

DISCRETION AND THE TRIAL COURT RULED AGAINST THE MOTHER WHEN THERE IS NOT CLEAR AND CONVINCING EVIDENCE TO DO SO; THIS IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.  THE TRIAL COURT COULD HAVE ALSO ORDERED A SHARED PARENTING DECREE NAMING BOTH PARENTS 'RESIDENTIAL PARENT' THEN ALTERED THE PARENTING TIME WITH EACH PARENT.  TO PUNISH THE MOTHER FOR MOVING AND TO REWARD THE FATHER IS AN ABUSE OF DISCRETION, PLAIN ERROR OF OHIO LAW, AND AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

SEVENTH ASSIGNMENT OF ERROR:

"THE TRIAL COURT ERRORED [SIC] IN A FINDING THAT TERMINATING THE SHARED PARENTING WAS IN THE CHILD'S BEST INTEREST AN ABUSE OF DISCRETION, AND AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.  [SIC]  THERE WAS NO EVIDENCE PRESENTED AT THE TRIAL TERMINATING SHARED PARENTING WAS IN [THE CHILD]'S BEST INTEREST. * * * *."

EIGHTH ASSIGNMENT OF ERROR:

"ALTHOUGH THE TRIAL COURT ERRORED [SIC] IN STATING WHETHER IT FOUND A CHANGE OF CIRCUMSTANCE.  [SIC]  THE TRIAL COURT FAILED TO UPHOLD OHIO STATUE [SIC], AND WAS IN PLAIN ERROR OF LAW.  IT IS BELIEVED BY THIS APPELLANT THAT THERE WAS NOT A CHANGE IN CIRCUMSTANCE BETWEEN ANY OF THE PARTIES, THE FATHER, THE MOTHER OR THE CHILD. * * * *"[2]

{¶ 2}   On August 17, 2011, the parties agreed to dissolve their marriage, and the court incorporated the parties' shared parenting plan into its dissolution decree.  The shared parenting plan states: "The parties agree to a shared parenting plan * * * with [appellant] designated as

---

[2]  We have omitted extraneous material from appellant's sixth, seventh, and eighth assignments of error.

residential parent."

{¶ 3}  Both parties eventually remarried.  Appellee and his new wife continued to live in Lawrence County.  Appellant married her new husband in September 2015.  Before their marriage, appellant's new husband obtained a job in Louisville, Kentucky.  In late spring 2015, appellant accepted a job offer in Louisville.

{¶ 4}  Appellant discussed her impending relocation with appellee in the hope that the parties could agree how to manage their shared parenting plan.  Apparently, the parties could not reach an agreement.  Thus, on May 21, 2015, appellee filed a motion to designate him the child's residential parent, or alternatively, to modify parenting time.  On August 19, 2015, appellant filed a motion to terminate the shared parenting plan and to designate her the sole residential parent, or alternatively, to modify the shared parenting plan.

{¶ 5}  On September 23 and 24, 2015, the magistrate held a hearing to consider the parties' motions.  Appellant testified that when the parties dissolved their marriage, they agreed to "do shared parenting so [appellee] could have equal rights and say so in [the child's] medical and school related things and anything else that would" arise.  Appellant further stated that the parties agreed that she would be designated the residential parent for "purposes of school."  She and appellee also agreed that appellant would have care of the child fifty-three percent of the time, and that appellee would have care of the child forty-seven percent of the time.

{¶ 6}  Appellant explained that shortly after the dissolution, she and appellee switched care of the child every two to three days.  However, once the child started kindergarten, the parties agreed that the child should stay in appellant's household during the school week.  Thus, throughout the child's kindergarten year, the child lived in appellant's household Monday

through Friday. Appellee had care of the child on alternating weekends, plus every Friday. During the summer after kindergarten, the parties switched care of the child every two to three days. When the child started first grade, the parties agreed that the child would stay in appellant's household Monday through Friday, that appellee could spend Tuesday and Thursday evenings with the child, and that appellee would have care of the child every other weekend.

{¶ 7} Appellant stated that during the six months to one year after the parties' dissolution, appellee attended the child's doctor visits. Appellant testified that after that time period, however, she "always took [the child] to the doctor" and "always * * * made the appointments and decided [whether the child] needed to go to the doctor." Appellant explained that she informed appellee about the doctor appointments so that he could attend, but that he did not indicate a desire to attend the appointments.

{¶ 8} Appellant testified that when she learned that she would be relocating to Louisville, she attempted to discuss the shared parenting arrangement with appellee and believed that the parties would be able to agree, but claimed that appellee refused to talk with her. Appellant explained that until she received appellee's May 2015 motion, she thought the parties still were attempting to resolve the matter.

{¶ 9} Appellant stated that she started working in Louisville in June 2015, that she and her current husband live in an apartment where the child has her own bedroom and bathroom, and that they live in a "very good" school district. Appellant related that Louisville has many nearby "kid-friendly" activities, such as bowling, miniature golf, science programs, martial arts, and dance. Appellant stated that she contemplated how shared parenting would work if the child primarily lives with her in Louisville and explained her proposal. Under her proposal, the child

would live in her household during the school week, and the parties would alternate weekends. Appellant explained that she believes the child should continue to live primarily in her household, because appellant has been the child's primary caregiver and because the child primarily lived in her household until the present litigation began. She believes that keeping the time each parent spends with the child as close as possible to their pre-litigation time would have the least detrimental impact on the child.

{¶ 10} Appellant acknowledged that the child has a large extended family in Lawrence County, but stated that even if the child primarily lived with her in Louisville, the child still will see the extended family two or three times each month. She testified that she plans to visit her family in Lawrence County at least once each month, and that she would make an effort so that the child continued to share a relationship with the extended family. Also, she noted that under her plan, the child would visit appellee (and have the opportunity to see the extended family) every other weekend. Appellant thus believes that the child could maintain her extended-family relationships, even if the child moved to Louisville.

{¶ 11} Appellee testified that he does not believe that relocating the child to Louisville is in the child's best interest. He explained that the child has deep connections in Lawrence County, with "twenty plus blood relatives." Appellee related that the child sees the extended family frequently and that his mother sometimes babysits the child. He believes that losing the frequent contact with the extended family would be detrimental to the child. Appellee further stated that the child has attended the same school for the past three years and has developed friendships. He believes that the child's connections to Lawrence County outweigh any potential benefit from transferring to a large city.

{¶ 12} Appellee agreed that before appellant relocated to Louisville, the child spent the majority of the time in appellant's household and that his household was "secondary." Appellee stated that since appellant's relocation, the situation has been reversed. He admitted that the child "miss[es] her mom."

{¶ 13} On September 29, 2015, the magistrate entered a decision that terminated the parties' shared parenting plan and designated appellee the child's residential parent. Appellant timely objected to the magistrate's finding that shared parenting is no longer in child's best interest, and to the decision to terminate shared parenting and designate appellee the residential parent.

{¶ 14} Appellant later obtained new counsel who filed "preliminary objections" and a motion to extend the time for filing objections. The "preliminary objections" alleged that the magistrate did not give proper weight to appellant's status as the child's primary caregiver and to her designation, in the shared parenting plan, as the child's residential parent. Appellant also objected to the magistrate's finding that designating appellee the child's residential parent is in the child's best interest, and to the magistrate's parenting time allocation.

{¶ 15} Subsequently, the trial court adopted the magistrate's decision as an interim order and granted appellant an extension of time to file objections. Later, the court adopted the magistrate's decision pending its ruling on the objections.

{¶ 16} On December 31, 2015, appellant filed "final" objections to the magistrate's decision. Appellant asserted that she initially thought terminating the shared parenting plan was in the child's best interest, but she "has changed her position" and now believes that the court should not terminate the plan, but instead, should maintain shared parenting and simply modify

the parenting time schedule.   Appellant alternatively argued that if the court terminates shared

parenting, then it should designate appellant the child's residential parent and "give [her] sole

custody."   She further stated that the court should instruct each party to submit income

documentation to calculate child support.

{¶ 17} On April 26, 2016, the trial court held a hearing to consider appellant's objections.

 At the hearing, appellant argued that terminating the shared parenting plan is not in the child's

best interest.   Appellant's counsel also indicated that appellee's counsel had provided income

documentation and that the parties had resolved the income-documentation issue.

{¶ 18} On May 3, 2016, the trial court entered a judgment that terminated the parties'

prior shared parenting decree and designated appellee the child's residential parent.[3]   In reaching

its decision, the court examined the R.C. 3109.04(F)(1) and (F)(2) best interest factors.   The

court noted that each parent requested "full custody" and that appellant alternatively requested

the court to modify the shared parenting plan.   The court found that both parents are "loving and

successful" and have the child's well-being "as their paramount concern."   The court observed

that it interviewed the child and that the child "was noncommittal and did not provide any

relevant information to the Court to decide the issues."   The court found that the child enjoys "a

very good relationship with each parent and with the two new spouses" and is "a well balanced

seven year old female, who did not appear to be in distress as to the current situation."   The

---

[3]   Although the trial court did not explicitly state whether it chose to adopt, modify, or reject the magistrate's decision pursuant to Civ.R. 53(D)(4)(b), the court's ultimate judgment reflects that it largely adopted the magistrate's decision.    Moreover, we point out that the trial court did not expressly rule on appellant's objections to the magistrate's decision.    Again, however, its ultimate judgment indicates that the court implicitly ruled on the objections.    *See generally Chatfield & Woods Sack Co., Inc. v. Nusekabel*, 1st Dist. Hamilton No. C♥980315, 1999 WL 960782, *1 (observing that trial court "implicitly overruled" objections to the magistrate's decision when it entered

court additionally noted that the child has twenty or more extended family members who live in the Lawrence County area and that the child is involved in church activities in Lawrence County. The court also recognized that the child recently moved from primarily living in appellant's household to living in appellee's household and that her "adjustment to these changes in circumstances are as expected."

{¶ 19} The trial court found that the parents had "minor difficulty in joint decision making," but "no difficulty" encouraging the sharing of love, affection and contact between the child and the other parent. The court further found that appellant's relocation to Louisville "would make shared parenting difficult, if not impossible." The court thus determined that appellant's move to Louisville, "coupled with the proposed removal of the child from her extended family, church and school, are not in the child's best interest." Consequently, the court terminated the shared parenting decree, designated appellee the residential parent, and allocated parenting time to appellant. This appeal followed.

I

PRO SE APPEAL

{¶ 20} Before we consider appellant's assignments of error, we observe that appellant is acting *pro se* in this appeal. Because we ordinarily prefer to review a case on its merits rather than dismiss it due to procedural technicalities, we generally afford considerable leniency to *pro se* litigants. *E.g., Viars v. Ironton,* 4th Dist. Lawrence No. 16CA8, 2016-Ohio-4912, 2016 WL 3670171, ¶25; *Miller v. Miller,* 4th Dist. Athens No. 14CA6, 2014-Ohio-5127, 2014 WL 6488876, ¶13; *In re Estate of Pallay,* 4th Dist. Washington No. 05CA45, 2006-Ohio-3528, 2006

summary judgment in the non-objecting party's favor).

WL 1875899, ¶10; *Robb v. Smallwood,* 165 Ohio App.3d 385, 2005-Ohio-5863, 846 N.E.2d 878, ¶5 (4th Dist.); *Besser v. Griffey,* 88 Ohio App.3d 379, 382, 623 N.E.2d 1326 (4th Dist.1993); *State ex rel. Karmasu v. Tate,* 83 Ohio App.3d 199, 206, 614 N.E.2d 827 (4th Dist.1992). "Limits do exist, however. Leniency does not mean, however, that we are required 'to find substance where none exists, to advance an argument for a *pro se* litigant or to address issues not properly raised.'" *State v. Headlee,* 4th Dist. Washington No. 08CA6, 2009-Ohio-873, 2009 WL 478085, ¶6, quoting *State v. Nayar,* 4th Dist. Lawrence No. 07CA6, 2007-Ohio-6092, 2007 WL 3407169, ¶28. Furthermore, we will not "conjure up questions never squarely asked or construct full-blown claims from convoluted reasoning." *Karmasu,* 83 Ohio App.3d at 206. We will, however, consider a *pro se* litigant's appellate brief so long as it "contains at least some cognizable assignment of error." *Robb* at ¶5; *accord Coleman v. Davis,* 4th Dist. Jackson No. 10CA5, 2011-Ohio-506, 2011 WL 345772, ¶14 (considering *pro se* litigant's brief when it contains "some semblance of compliance" with appellate rules of practice and procedure). In the case *sub judice,* we believe that appellant's brief contains some cognizable assignments of error that we may consider on the merits.

## II

## INDEPENDENT REVIEW

{¶ 21} In her first assignment of error, appellant asserts that the trial court failed to independently review the magistrate's decision. She claims that if the trial court judge "had performed a proper review, he would have recognized that" the magistrate's decision was "unlawful and in plain error of the Ohio law." We do not agree with appellant.

{¶ 22} Civ.R. 53(D)(4)(d) governs a trial court's ruling on objections to a magistrate's

decision and states: "In ruling on objections, the court shall undertake an independent review as to the objected matters to ascertain that the magistrate has properly determined the factual issues and appropriately applied the law." Thus, a trial court's review of a magistrate's decision "contemplates a *de novo* review of any issue of fact or law that a magistrate has determined when an appropriate objection is timely filed." *Knauer v. Keener,* 143 Ohio App.3d 789, 793–94, 758 N.E.2d 1234 (2nd Dist.2001).

{¶ 23} Absent facts to the contrary, appellate courts should presume that a trial court conducted an independent analysis when it reviewed a magistrate's decision. *Mahlerwein v. Mahlerwein,* 160 Ohio App.3d 564, 2005-Ohio-1835, 828 N.E.2d 153, ¶47 (4th Dist.); *see State v. Raber,* 134 Ohio St.3d 350, 2012–Ohio–5636, 982 N.E.2d 684, ¶19 (stating that "[a] presumption of regularity attaches to all judicial proceedings"). A party who asserts that the trial court did not conduct an independent review bears the burden to affirmatively rebut this presumption. *Mahlerwein* at ¶47. "An affirmative duty requires more than a mere inference[;] it requires appellant to provide the reviewing court with facts to rebut [the] general presumption." *In re Taylor G.,* 6th Dist. No. L–05–1197, 2006-Ohio-1992, 2006 WL 1047474, ¶21; *accord Massie v. Sammons*, 4th Dist. Scioto No. 14CA3630, 2014-Ohio-5835, 2014 WL 7477855, ¶32.

{¶ 24} After our review in the case sub judice, we do not believe that appellant has overcome the presumption of regularity. Instead, the record indicates that the trial court independently reviewed the magistrate's decision. The court noted that appellant filed objections to the magistrate's decision, that the court held a hearing on her objections, and that the court reviewed the magistrate's hearing transcript. The court set forth its own factual

findings and legal conclusions. We have not found anything in the record to suggest that the trial court failed to independently review the magistrate's decision. We therefore have no basis to conclude that the trial court failed to conduct an independent review of the magistrate's decision. Appellant's mere disagreement with the trial court's application of the law does not show that the court failed to independently review the magistrate's decision. Consequently, appellant's first assignment of error is meritless. *See generally Krohn v. Krohn*, 6th Dist. Wood No. WD-16-010, 2016-Ohio-8379, 2016 WL 7611399, ¶8 (finding "unsupported assertion of a lack of an independent review to be without merit"); *Vogel v. Mestemaker*, 2nd Dist. Darke Nos. 2015-CA-20 and 2015-CA-22, 2016-Ohio-7244, 2016 WL 5887178, ¶10 (determining that record failed to show court did not independently review magistrate's decision when trial court's ruling "explicitly recognized" objections to magistrate's decision).

{¶ 25} Accordingly, based upon the foregoing reasons, we overrule appellant's first assignment of error.

III

INCOME DOCUMENTATION

{¶ 26} In her second assignment of error, appellant argues that the trial court erred when it calculated child support without requiring income documentation. As appellee notes, however, the parties remedied this issue after appellant raised the matter in her objections to the magistrate's decision. At a hearing regarding appellant's objections, appellant, through her counsel, agreed that appellee had provided income documentation after the magistrate had issued his decision. Thus, the record indicates that the parties resolved this issue. Thus, the parties' resolution of the income-documentation issue renders the issue moot. *See generally State ex rel.*

*Cincinnati Enquirer v. Ohio Dept. of Pub. Safety*, — Ohio St.3d —, 2016-Ohio-7987, — N.E.3d —, ¶29 (noting that producing requested records in public records case ordinarily renders case moot). "An issue is moot 'when it has no practical significance and, instead, presents a hypothetical or academic question.'" *State ex rel. Ford v. Ruehlman*, — Ohio St.3d —, 2016-Ohio-3529, — N.E.3d —, ¶55, quoting *State v. Moore,* 4th Dist. Adams No. 13CA987, 2015-Ohio-2090, 2015 WL 3452607, ¶7.

{¶ 27} In the case sub judice, deciding whether the trial court should have required the parties to produce income-documentation would have no practical significance. Appellant agreed that appellee produced income-documentation. Thus, if we decided the matter, we could not afford appellant any relief.

{¶ 28} Accordingly, based upon the foregoing reasons, we overrule appellant's second assignment of error.

IV

SHARED-PARENTING-DECREE TERMINATION
AND RESIDENTIAL PARENT DESIGNATION

{¶ 29} Appellant's third through seventh assignments of error challenge various aspects of the trial court's decision that terminated the shared parenting decree and that designated appellee the child's residential parent. For ease of discussion, we consider them together.

A

INCORRECT LEGAL STANDARD

{¶ 30} In her third and fourth assignments of error, appellant asserts that the trial court applied the incorrect legal standard when it terminated the shared parenting plan and designated

appellee the child's residential parent.  She claims that although the trial court purported to terminate the parties' shared parenting decree, the court actually modified the prior decree with the attached shared parenting plan that designated her the child's residential parent.  Appellant argues that (1) the trial court incorrectly construed the parties' dissolution decree and attached shared parenting plan as creating a "shared parenting plan" within the meaning of the statute when the plan clearly designated appellant the child's residential parent, and (2) a shared parenting plan that designates one parent the child's residential parent cannot, by definition, constitute a shared parenting plan.  Appellant thus contends that the trial court should have applied the R.C. 3109.04(E)(1)(a) change-in-circumstances standard applicable to residential-parent-modifications, instead of the R.C. 3109.04(E)(2)(c) shared-parenting-decree-termination standard.

{¶ 31} Initially, we observe that appellant did not object to the magistrate's decision to apply the shared-parenting-termination standard, instead of the change-in-circumstances standard.  Under Civ.R. 53(D)(3)(b)(ii), objections must be "specific" and a party must "state with particularity all grounds for objections."  The failure to timely file specific objections and to state with particularity all grounds for objection results in a "[w]aiver" of those particular issues on appeal.  Civ.R. 53(D)(3)(b)(iv); *State ex rel. Muhammad v. State,* 133 Ohio St.3d 508, 2012–Ohio–4767, 979 N.E.2d 296, ¶3 (noting that party waives argument on appeal if party failed to specifically raise issue in objections to magistrate's decision); *Faulks v. Flynn,* 4th Dist. Scioto No. 13CA3568, 2014–Ohio–1610, ¶17, citing Civ.R. 53(D)(3)(b)(iv) ("A party forfeits or waives the right to challenge the trial court's adoption of a factual finding or legal conclusion unless the party objects in accordance with Civ.R. 53(D)(3)(b)"); *Walters v. Walters,* 9th Dist.

Medina No. 12CA0017–M, 2013–Ohio–636, ¶15 (explaining that a party's failure to raise a particular issue when objecting to a magistrate's decision results in a waiver of that issue on appeal); *McClain v. McClain,* 4th Dist. Athens No. 10CA53, 2011–Ohio–6101, ¶7.  *See generally State v. Awan,* 22 Ohio St.3d 120, 122, 498 N.E.2d 277 (1986) (explaining that appellate courts "will not consider any error which counsel for a party complaining of the trial court's judgment could have called but did not call to the trial court's attention at a time when such error could have been avoided or corrected by the trial court.").

{¶ 32} Courts may, however, consider plain errors.  *See* Civ.R. 53(D)(3)(b)(iv). Generally, courts should exercise extreme caution when invoking the plain error doctrine, especially in civil cases. Thus, "the doctrine is sharply limited to the *extremely rare* case involving *exceptional* circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself."  *Goldfuss v. Davidson,* 79 Ohio St.3d 116, 122–123, 679 N.E.2d 1099 (1997) (emphasis *sic); accord Gable v. Gates Mills,* 103 Ohio St.3d 449, 2004–Ohio–5719, 816 N.E.2d 1049, ¶43.  Moreover, we recognize that the Ohio Supreme Court has cautioned that "[t]he plain error doctrine should never be applied to reverse a civil judgment * * * to allow litigation of issues which could easily have been raised and determined in the initial trial."  *Goldfuss,* 79 Ohio St.3d at 122.

{¶ 33} Trial courts possess a great deal of discretion when considering how to allocate parental rights and responsibilities so as to promote a child's best interest.  Consequently, establishing plain error in a parental-rights-and-responsibilities matter ""''is particularly difficult.''''  *Roby v. Roby*, 4th Dist. Washington No. 15CA21, 2016-Ohio-7851, 2016 WL

6875703, ¶19, quoting *Faulks* at ¶20, quoting *Robinette v. Bryant,* 4th Dist. Lawrence No. 12CA20, 2013–Ohio–2889, ¶28.

{¶ 34} In the case sub judice, appellant does not recognize that she failed to object to the magistrate's decision to apply the shared-parenting-termination standard, instead of the change-in-circumstances standard. While she recites "plain error" on multiple occasions throughout her appellate brief, she does not raise any particular "plain error" arguments. Under these circumstances, we need not consider whether the court plainly erred. *State v. Quarterman*, 140 Ohio St.3d 464, 2014-Ohio-4034, 19 N.E.3d 900, ¶19, quoting *State v. Bodyke,* 126 Ohio St.3d 266, 2010-Ohio-2424, 933 N.E.2d 753, ¶78 (O'Donnell, J., concurring in part and dissenting in part), quoting *Carducci v. Regan,* 714 F.2d 171, 177 (D.C.Cir.1983) (stating that appellate courts "are not obligated to search the record or formulate legal arguments on behalf of the parties, because '"appellate courts do not sit as self-directed boards of legal inquiry and research, but [preside] essentially as arbiters of legal questions presented and argued by the parties before them"'"); *Coleman v. Coleman,* 9th Dist. Summit No. 27592, 2015–Ohio–2500, ¶9 (explaining that reviewing court will not craft plain error argument for an appellant who fails to raise one). Regardless, after our review we do not believe that any error the trial court may have made seriously affected the legitimacy of the underlying judicial process.[4]

{¶ 35} We further note that at no point during the trial court proceedings did appellant

---

[4] We observe that appellate courts have rejected arguments that a trial court must find a change in circumstances before terminating a shared parenting decree that includes a shared parenting plan designating one of the parents the child's residential parent. *Sayre v. Furgeson*, 2016-Ohio-3500, 66 N.E.3d 332 (3rd Dist.); *In re J.L.R.*, 4th Dist. Washington No. 08CA17, 2009-Ohio-5812, ¶28.

assert that the trial court should apply the R.C. 3109.04(E)(1)(a) change-in-circumstances standard. Instead, she initially requested the court to terminate the shared parenting decree and to designate her the child's residential parent or, alternatively, to modify the shared parenting plan's parenting time provisions. She later "changed her mind" and argued that the court should not terminate the shared parenting plan, but instead, should simply modify the parties' parenting time as set forth in the shared parenting plan. Appellant did not advocate that the court should apply the R.C. 3109.04(E)(1)(a) change-in-circumstances standard. Appellant cannot advocate during the trial court proceedings that the trial court should apply either the shared-parenting-decree-termination standard (R.C. 3109.04(E)(2)(c)) or the shared-parenting-plan-modification standard (R.C. 3109.04(E)(2)(a) and (b)), and then argue on appeal that the trial court should have employed the change-in-circumstances standard. *In re S.N.T. and S.L.T.,* 4th Dist. Washington No. 12CA2, 2012–Ohio–3266, ¶10 (determining that party in custody proceeding waived argument that trial court should have applied change-in-circumstances standard before awarding custody when party advocated a different standard before the trial court). We therefore believe that appellant invited any error that might be associated with the trial court's failure to apply the change-in-circumstances standard. *See State ex rel. Kline v. Carroll*, 96 Ohio St.3d 404, 2002–Ohio–4849, 775 N.E.2d 517, ¶27 ("Under [the invited-error] doctrine, a party is not entitled to take advantage of an error that he himself invited or induced the court to make"); *State v. Rohrbaugh,* 126 Ohio St.3d 421, 2010–Ohio–3286, 934 N.E.2d 920, ¶10 (even plain error is waived where error is invited);.

{¶ 36} We additionally point out that the invited-error doctrine is not rendered inapplicable when a party claims plain error:

While invocation of the plain error doctrine is often justified in order to promote public confidence in the judicial process, "[it is doubtful that] the public's confidence in the jury system is undermined by requiring parties to live with the results of errors that they invited, even if the errors go to 'crucial matters.'   In fact, the idea that parties must bear the cost of their own mistakes at trial is a central presupposition of our adversarial system of justice."

*Goldfuss*, 79 Ohio St.3d at 121-122, quoting *Montalvo v. Lapez* 1994), 77 Hawaii 282, 305, 884 P.2d 345, 368 (Nakayama, J., concurring in part and dissenting in part).   Thus, even if the trial court plainly erred by applying R.C. 3109.04(E)(2)(c), instead of R.C. 3109.04(E)(1)(a) or (E)(2)(a) and (b), appellant cannot take advantage of a plain error that she invited.[5]

{¶ 37} Accordingly, based upon the foregoing reasons, we overrule appellant's third and fourth assignments of error.

## B

## SHARED PARENTING DECREE TERMINATION

{¶ 38} In her fifth assignment of error, appellant challenges the trial court's finding the

---

[5] We observe that appellant appears to blame her original trial counsel for filing a motion to terminate the shared parenting decree, rather than a simple request to modify the shared parenting plan's parenting time provisions, and requests that we consider her castigation of trial counsel in reviewing her appeal.   We note, however, that the Ohio Supreme Court has refused to recognize trial counsel's purported error in a civil case as a justification for reversing a trial court's judgment.   *Goldfuss*, 79 Ohio St.3d at 122.

Parties in civil litigation choose their own counsel who, in turn, choose their theories of prosecuting and defending.   The parties, through the attorneys, bear responsibility for framing the issues and for putting both the trial court and their opponents on notice of the issues * * *.   An unsuccessful litigant may not obtain a new trial based upon the bare assertion that his or her attorney was ineffective.   To so hold would unfairly shift the loss caused by poor strategy decisions, miscalculations, or errors from the parties responsible to the innocent opponent.   If an attorney's representation has fallen below professional standards, remedies are available in a malpractice action.

*Id.* (citations omitted); *accord Phillis v. Phillis*, 164 Ohio App.3d 364, 2005-Ohio-6200, 842 N.E.2d 555, 53 (5th Dist.) (explaining that civil litigant does not have a constitutional or statutory right to effective assistance of counsel when incarceration not involved and when attorney privately employed).

both parties wished to terminate the shared parenting plan. Appellant argues that she "changed her mind" and "never agreed to terminate the shared parenting plan."

{¶ 39} In her sixth assignment of error, appellant contends that the trial court "was bias[ed] against [her] and failed to recognize that both parents filed motions to change the parenting time of the child." She asserts that the parties "only agreed to modify the parenting time of the parties" and that the trial court should have maintained the shared parenting decree and simply modified the parenting time provisions set forth in the shared parenting plan.

{¶ 40} In her seventh assignment of error, appellant argues that the trial court abused its discretion by determining that terminating the shared parenting plan is in the child's best interest. She contends that "[t]here was no evidence presented at the trial terminating shared parenting was in [the child]'s best interest."

1

STANDARD OF REVIEW

{¶ 41} Appellate courts generally review trial court decisions regarding the allocation of parental rights and responsibilities with the utmost deference. *Davis v. Flickinger,* 77 Ohio St.3d 415, 418, 674 N.E.2d 1159 (1997); *Miller v. Miller,* 37 Ohio St.3d 71, 74, 523 N.E.2d 846 (1988). Consequently, "a trial court's decision in a custody proceeding is subject to reversal only upon a showing of abuse of discretion." *In re A.J.*, — Ohio St.3d —, 2016-Ohio-8196, — N.E.3d. —, ¶27.

{¶ 42} "'Abuse of discretion' has been defined as an attitude that is unreasonable, arbitrary or unconscionable." *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.,* 50 Ohio St.3d 157, 161, 553 N .E.2d 597 (1990), citing *Huffman v. Hair*

*Surgeon, Inc.,* 19 Ohio St.3d 83, 87, 482 N.E.2d 1248 (1985); *accord Westlake Civ. Serv. Comm. v. Pietrick*, 142 Ohio St.3d 495, 2015-Ohio-961, 33 N.E.3d 18, ¶36. "A decision is unreasonable if there is no sound reasoning process that would support that decision." *AAAA Ents., Inc.*, 50 Ohio St.3d at 161. An unconscionable or arbitrary decision generally means a """"view or action 'that no conscientious judge, acting intelligently, could honestly have taken.'""" *State v. Cunningham*, 113 Ohio St.3d 108, 2007-Ohio-1245, 863 N.E.2d 120, ¶25, quoting *State ex rel. Wilms v. Blake*, 144 Ohio St. 619, 624, 30 O.O. 220, 60 N.E.2d 308 (1945), quoting *Long v. George*, 296 Mass. 574, 579, 7 N.E.2d 149 (1937), quoting *Davis v. Boston Elevated Ry. Co.*, 235 Mass. 482, 497, 126 N.E. 841 (1920). In other words, in order to find an abuse of discretion, "'the result must be so palpably and grossly violative of fact or logic that it evidences not the exercise of will but the perversity of will, not the exercise of judgment but the defiance of judgment, not the exercise of reason but instead passion or bias.'" *Vaught v. Cleveland Clinic Found.,* 98 Ohio St.3d 485, 2003–Ohio–2181, 787 N.E.2d 631, ¶13, quoting *Nakoff v. Fairview Gen. Hosp.,* 75 Ohio St.3d 254, 256, 662 N.E.2d 1 (1996); *accord Freshwater v. Mt. Vernon City School Dist. Bd. of Edn.,* 137 Ohio St.3d 469, 2013–Ohio–5000, 1 N.E.3d 335, ¶77; *Pons v. Ohio State Med. Bd.,* 66 Ohio St.3d 619, 621, 614 N.E.2d 748 (1993) ("The appellate court is to determine only if the trial court has abused its discretion, *i.e.,* being not merely an error of judgment, but perversity of will, passion, prejudice, partiality, or moral delinquency."). A decision is not unreasonable, arbitrary, or unconscionable "simply because the appellate court might not have reached the same conclusion or is, itself, less persuaded by the trial court's reasoning process than by the countervailing arguments." *State v. Morris,* 132 Ohio St.3d 337, 2012-Ohio-2407, 972 N.E.2d 528, ¶14, citing *AAAA Ents., Inc.,* 50 Ohio St.3d at 161

(stating "[i]t is not enough that the reviewing court, were it deciding the issue de novo, would not have found that reasoning process to be persuasive, perhaps in view of countervailing reasoning processes that would support a contrary result"). Thus, when applying the abuse of discretion standard, a reviewing court may not substitute its judgment for that of the trial court. *E.g., Savage v. Correlated Health Serv., Ltd.,* 64 Ohio St.3d 42, 55, 591 N.E.2d 1216 (1992); *Freshwater* at ¶77, quoting *Graziano,* 32 Ohio St.3d at 294, 513 N.E.2d 282 ("'Absent an abuse of discretion on the part of the trial court, the court of appeals may not engage in what amounts to a substitution of judgment of the trial court.'").

{¶ 43} In *Davis,* the court more specifically defined the standard of review that applies in custody proceedings as follows:

> "Where an award of custody is supported by a substantial amount of credible and competent evidence, such an award will not be reversed as being against the weight of the evidence by a reviewing court. (*Trickey v. Trickey* [1952], 158 Ohio St. 9, 47 O.O. 481, 106 N.E.2d 772, approved and followed.)" [*Bechtol v. Bechtol* (1990), 49 Ohio St.3d 21, 550 N.E.2d 178, syllabus].
>
> The reason for this standard of review is that the trial judge has the best opportunity to view the demeanor, attitude, and credibility of each witness, something that does not translate well on the written page. As we stated in *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 80–81, 10 OBR 408, 410–412, 461 N.E.2d 1273, 1276–1277:
>
> "The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony. * * * * * * *
>
> * * * A reviewing court should not reverse a decision simply because it holds a different opinion concerning the credibility of the witnesses and evidence submitted before the trial court. A finding of an error in law is a legitimate ground for reversal, but a difference of opinion on credibility of witnesses and evidence is not. The determination of credibility of testimony and evidence must not be encroached upon by a reviewing tribunal, especially to the extent where the appellate court relies on unchallenged, excluded evidence in order to justify its reversal."

*Id.* at 418–419.

{¶ 44} Additionally, deferring to the trial court on matters of credibility is "crucial in a child custody case, where there may be much evident in the parties' demeanor and attitude that does not translate to the record well." *Id.* at 419. Furthermore, "custody issues are some of the most difficult and agonizing decisions a trial judge must make. Therefore, a trial judge must have wide latitude in considering all the evidence." *Id.* at 418. As the Ohio Supreme Court long-ago explained:

> In proceedings involving the custody and welfare of children the power of the trial court to exercise discretion is peculiarly important. The knowledge obtained through contact with and observation of the parties and through independent investigation can not be conveyed to a reviewing court by printed record.

*Trickey,* 158 Ohio St. at 13. Thus, this discretionary standard of review does not permit us to reverse a trial court's decision if we simply disagree with it. We may, however, reverse a trial court's custody decision if the court made an error of law, if its decision is unreasonable, arbitrary, or unconscionable, or if substantial competent and credible evidence fails to support it. *Davis,* 77 Ohio St.3d at 418–419, 421 (explaining "abuse of discretion standard" and stating that courts will not reverse custody decisions as against the manifest weight of the evidence if substantial competent and credible evidence supports it, courts must defer to fact-finder, courts may reverse upon error of law, and trial court has broad discretion in custody matters).

R.C. 3109.04(E)(2)(c)

{¶ 45} R.C. 3109.04(E)(2)(c) allows a court to "terminate a prior final shared parenting decree that includes a [jointly-recommended] shared parenting plan * * * upon the request of one or both of the parents or whenever it determines that shared parenting is not in the best interest of the children."

{¶ 46} Thus, a court may terminate a jointly-recommended parenting decree if (1) one of the parties requests it, (2) if both parties request it, or (3) if the court finds that shared parenting no longer is in the child's best interest. *J.L.R.*, supra, at ¶31. The statute does not require a trial court to find a change in circumstances before it may terminate a shared parenting decree. *Id.* at ¶28.

{¶ 47} In the case sub judice, even if appellant ultimately "changed her mind" about terminating shared parenting, appellee requested the court to terminate it. Consequently, R.C. 3109.04(E)(2)(c) permitted the trial court to terminate the shared parenting decree upon appellee's request alone. *Sayre v. Furgeson, supra,* at ¶33 (explaining that "[i]f both parties agreed upon the shared parenting plan, a mere request by one or both of the parents is a sufficient basis" for terminating shared parenting decree). The trial court did not need to find that both parties requested to terminate the shared parenting decree. Accordingly, any error that the court may have made by determining that both parties requested the court to terminate the shared parenting decree is harmless. *See* Civ.R. 61 (explaining that court "must disregard any error or defect in the proceeding" that does not affect a party's substantial rights).

{¶ 48} Additionally, assuming, arguendo, that the trial court was required to determine that shared parenting no longer is in the child's best interest, we do not believe that the court

abused its discretion by concluding that shared parenting no longer is in the child's best interest.

R.C. 3109.04(F)(2) sets forth the factors a court must consider in determining whether shared

parenting is in a child's best interest:

> (a) The ability of the parents to cooperate and make decisions jointly, with respect to the children;
> (b) The ability of each parent to encourage the sharing of love, affection, and contact between the child and the other parent;
> (c) Any history of, or potential for, child abuse, spouse abuse, other domestic violence, or parental kidnapping by either parent;
> (d) The geographic proximity of the parents to each other, as the proximity relates to the practical considerations of shared parenting;
> (e) The recommendation of the guardian ad litem of the child, if the child has a guardian ad litem.

Even if some of the foregoing factors suggest that shared parenting had been working well for the

child and the parents until appellant's relocation, we believe that the trial court could have

reasonably decided that appellant's relocation would render shared parenting impractical. *See*

*generally J.L.R.* at ¶34. Appellant relocated to Louisville, approximately three hours from the

only home the child has ever known. We do not find it illogical to believe that sharing the

parental rights and responsibilities from that distance would prove impractical. Moreover, the

distance between appellant's new home and the child's hometown would not allow mid-week

exchanges during the school year. Instead, the child would need to remain primarily in one

location throughout the school year, instead of being transported back-and-forth. While the

record leaves no doubt that both appellant and appellee are wonderful parents who deeply love

and care for their child, and that either home would be an appropriate place for the child, the

three-hour distance between their homes reasonably supports a finding that shared parenting has

become impractical.

{¶ 49} Additionally, although the evidence indicates that the parties generally cooperated when they both lived in Lawrence County, appellant's relocation complicated their cooperation efforts. The parties attempted to resolve appellant's relocation and where the child would live, but apparently, they could not agree. Thus, their actions demonstrate that their shared parenting arrangement had become unworkable.

{¶ 50} To the extent appellant claims that the trial court failed to set forth sufficient factual findings concerning the shared-parenting-best-interest factors, we observe that she did not file a Civ.R. 52 request for findings of fact and conclusions of law. Civ.R. 52 states:

> When questions of fact are tried by a court without a jury, judgment may be general for the prevailing party unless one of the parties in writing requests otherwise * * * in which case, the court shall state in writing the conclusions of fact found separately from the conclusions of law.

{¶ 51} The purpose of Civ.R. 52 findings of fact and conclusions of law is "'to aid the appellate court in reviewing the record and determining the validity of the basis of the trial court's judgment.'" *In re Adoption of Gibson,* 23 Ohio St.3d 170, 172, 492 N.E.2d 146 (1986), quoting *Werden v. Crawford,* 70 Ohio St.2d 122, 124, 435 N.E.2d 424 (1982). Thus, a party may file a Civ.R. 52 request in order "to ensure the fullest possible review." *Cherry v. Cherry,* 66 Ohio St.3d 348, 356, 421 N.E.2d 1293 (1981).

{¶ 52} In the absence of findings of fact and conclusions of law, we presume that the trial court applied the law correctly and will affirm its judgment if evidence in the record supports it. *Bugg v. Fancher,* 4th Dist. Highland No. 06CA12, 2007–Ohio–2019, ¶10, citing *Allstate Fin. Corp. v. Westfield Serv. Mgt. Co.,* 62 Ohio App.3d 657, 577 N.E.2d 383 (12th Dist.1989); *accord Leikin Oldsmobile, Inc. v. Spofford Auto Sales,* 11th Dist. Lake No. 2000–L–202,

2002–Ohio–2441, ¶17 ("It is difficult, if not impossible, to determine the basis of the trial court's ruling without findings of fact and conclusions of law * * *."); *Yocum v. Means,* 2nd Dist. Darke No. 1576, 2002–Ohio–3803, ¶7 ("The lack of findings obviously circumscribes our review * * *."). As the court explained in *Pettet v. Pettet,* 55 Ohio App.3d 128, 130, 562 N.E.2d 929 (5th Dist.1988):

> [W]hen separate facts are not requested by counsel and/or supplied by the court the challenger is not entitled to be elevated to a position superior to that he would have enjoyed had he made his request. Thus, if from an examination of the record as a whole in the trial court there is some evidence from which the court could have reached the ultimate conclusions of fact which are consistent with [its] judgment the appellate court is bound to affirm on the weight and sufficiency of the evidence.
>
> The message should be clear: If a party wishes to challenge the * * * judgment as being against the manifest weight of the evidence he had best secure separate findings of fact and conclusions of law. Otherwise his already "uphill" burden of demonstrating error becomes an almost insurmountable "mountain."

{¶ 53} Furthermore, the absence of a request for findings of fact and conclusions of law ordinarily results in a waiver of the right to challenge the trial court's lack of an explicit finding concerning an issue. *E.g., Fultz v. Fultz,* 4th Dist. Pickaway No. 13CA9, 2014–Ohio–3344, ¶51. Moreover, a party that does not request findings of fact and conclusions of law cannot complain on appeal as to a lack of specificity of such findings. *Id.*

{¶ 54} In the case at bar, even if the trial court failed to fully analyze the R.C. 3109.04(F)(2) best interest factors, in the absence of a Civ.R. 52 request it was not required to do so. *Savage v. Savage*, 4th Dist. Pike No. 15CA856, 2015-Ohio-5290, 2015 WL 9260564, ¶23; Hopkins v. Hopkins, 4th Dist. Scioto No. 14CA3597, 2014-Ohio-5850, ¶17, citing *In re E.W.,* 4th Dist. Washington Nos. 10CA18, 10CA19, and 10CA20, 2011–Ohio–2123, ¶22; *Bates v. Gould,* 4th Dist. Highland No. 03CA12, 2004–Ohio–571, ¶12. Thus, appellant cannot claim on appeal

that the trial court erred by failing to completely explain its reasoning regarding the R.C. 3109.04(F)(2) best interest factors. Consequently, in the absence of evidence to the contrary, we presume the regularity of the trial court proceedings and presume that the trial court properly applied the law to the facts of the case. We have found nothing in the record to suggest that the trial court failed to properly analyze the factors set forth in R.C. 3109.04(F)(2).

3

## ALLOCATION OF PARENTAL RIGHTS AND RESPONSIBILITIES AFTER TERMINATING SHARED PARENTING DECREE

{¶ 55} Although not entirely clear, appellant also appears to argue that the trial court abused its discretion by designating appellee the child's residential parent.

{¶ 56} If a court terminates a prior shared parenting decree,

{¶ 57} "the court shall proceed and issue a modified decree for the allocation of parental rights and responsibilities for the care of the children under the standards applicable under divisions (A), (B), and (C) of this section as if no decree for shared parenting had been granted and as if no request for shared parenting ever had been made." R.C. 3109.04(E)(2)(c).

{¶ 58} R.C. 3109.04(B) specifies that the court must consider a child's best interest when allocating parental rights and responsibilities. R.C. 3109.04(F)(1) states that a court that is evaluating a child's best interest must consider all relevant factors, in addition to the following factors:

> (a) The wishes of the child's parents regarding the child's care;
> (b) If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;

(c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;

(d) The child's adjustment to the child's home, school, and community;

(e) The mental and physical health of all persons involved in the situation;

(f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;

* * * *

(j) Whether either parent has established a residence, or is planning to establish a residence, outside this state.

{¶ 59} In the case sub judice, we do not believe that the trial court abused its discretion when it evaluated the R.C. 3109.04(F)(1) best interest factors and designated appellee the child's residential parent. Both parents would like the child to live primarily under their care, but that obviously is not possible. Appellant believes that she should be the child's residential parent–or that the parties should maintain shared parenting. Appellant asserts that she has been the child's primary caregiver and that uprooting the child from that situation would detrimentally affect the child. Appellee, on the other hand, believes that the child should continue to live in Lawrence County, where she shares deep roots and loving relationships with numerous members of the extended family.

{¶ 60} The evidence leaves no doubt that both appellant and appellee are excellent parents who deeply love and care for their child and that either household would be an appropriate place for the child to live. Thus, the trial court faced an impossible choice between two loving parents. If the court designated appellant the residential parent, then the court would remove the child from Lawrence County and the connections that the child has established with her school and community and, most likely, significantly reduce the amount of time that appellee spent with the child. If, on the other hand, the court designated appellee the residential parent,

the court would significantly reduce the amount of time appellant spends with the child, but maintain the child's Lawrence county roots. When faced with this agonizing decision, the trial court determined that keeping the child in Lawrence County, where she shares significant ties to her family and the community, will better serve her interests than relocating to a new home, a new school, and a new community. We are unable to find anything in the record that leads us to believe that the trial court acted unreasonably, arbitrarily, or unconscionably when it designated appellee the child's residential parent. *See generally In re C.S.*, 12th Dist. Warren No. CA2015-05-041, 2015-Ohio-3937, ¶28 (concluding that trial court did not abuse its discretion by designating father residential parent when mother moved to California and when designating mother residential parent would uproot child from existing community); *Lopez v. Lopez*, 10th Dist. Franklin No. 04AP-508, 2005-Ohio-1155 (determining that trial court did not abuse its discretion by terminating shared parenting decree and designating father child's residential parent when mother relocated to West Virginia). The trial court had a rational basis to conclude that keeping the child in Lawrence County, and that designating appellee her residential parent, would be in her best interest. We are also unable to find that the court acted as no conscientious judge would have, that the court's decision grossly violates fact or logic, or that its decision reflects passion, bias, a perversion of will, or the defiance of judgment. Additionally, substantial competent and credible evidence supports the trial court's decision. Even if we were persuaded that we would have opted to decide the matter differently, the abuse-of-discretion standard of review does not allow us to simply substitute our judgment for that of the trial court.

{¶ 61} Appellant also asserts that the trial court failed to consider that she has been the child's primary caregiver and that she has been the parent primarily responsible for the child's

day-to-day care and decision-making. The court, however, found that the parties' shared parenting plan indicated that the parties shared equal decision-making and appeared to be unconvinced that appellant made the majority of the decisions concerning the child. The court noted that appellant "state[d] several times that she was the primary decision maker during portions of the shared parenting agreement, even though that would seem to conflict with the rights under shared parenting."

{¶ 62} Furthermore, even if appellant was the child's primary caregiver, a party's status as a child's primary caregiver is a relevant, but not a controlling, factor that a court must consider when it evaluates a child's best interest. *Bechtol*, 49 Ohio St.3d at 23 (explaining that a trial court "should give due consideration to which parent performed the role as primary caregiver"); *In re Maxwell*, 8 Ohio App.3d 302, 306, 56 N.E.2d 1218 (1982); *accord Carr v. Carr*, 4th Dist. Washington No. 00CA26, 2001-Ohio-2466, 2001 WL 569296; *Holm v. Smilowitz*, 83 Ohio App.3d 757, 776, 615 N.E.2d 1047 (1992); *Thompson v. Thompson*, 31 Ohio App.3d 254, 257, 511 N.E.2d 412 (4th Dist.1987); *Chelman v. Chelman,* 2nd Dist. Greene App. No.2007 CA 79, 2008–Ohio–4634, ¶43; *Glover v. Glover*, 66 Ohio App.3d 724, 730, 586 N.E.2d 159 (1990). "[A] court that fails to consider the primary care giving of a parent ignores the benefits likely to flow to the child from maintaining day to day contact with the parent on whom the child has depended for satisfying his basic physical and psychological needs." *Kelly v. Kelly*, 2nd Dist. Miami No. 2001-CA-52, 2002-Ohio-1204, 2002 WL 360656; *Thompson*, 31 Ohio App.3d at 257 (stating that allowing "the parent who has been the primary caregiver to continue having custody is often necessary for the best interest of the child"). However, "a party's role as the primary caregiver is not given presumptive weight over other relevant factors." *Maxwell* at ¶43; *Vance*

*v. Vance*, 151 Ohio App.3d 391, 2003-Ohio-310, 784 N.E.2d 172, 2003 WL 164806, ¶38 (2nd Dist.). However, a trial court should not rely on a determination of the primary caretaker as a substitute for a searching factual analysis of the parties' relative parental capabilities and the child's psychological and physical needs. *McCoy v. Sullivan*, 4th Dist. Scioto No. 16CA3751, 2016-Ohio-8276, ¶20; *Carr*; *Thompson*.

{¶ 63} In the case sub judice, even if we believe it is " * * * ill advised and imprudent to disrupt the pattern to which the child has become accustomed," our conclusion would fall "short of the oft-repeated test that a finding of abuse of discretion must imply a decision that is ' * * * unreasonable, arbitrary or unconscionable.'" *Bechtol*, 49 Ohio St.3d at 23, quoting *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 64} Additionally, to the extent that appellant claims that the trial court's written decision fails to consider that she was the child's primary caregiver, we again point out that appellant did not file a Civ.R. 52 request findings of fact and conclusions of law. Thus, the trial court was not obligated to set forth any specific factual findings or legal conclusions relating to the child's primary caregiver. Moreover, in the absence of evidence to the contrary, we presume that the trial court considered all relevant best interest factors, including whether a parent functioned as a child's primary caregiver. *Carr* at *4. In the case at bar, we find no evidence to suggest that the trial court failed to consider the child's primary caregiver when evaluating her best interest. We therefore presume that the trial court gave it appropriate consideration.

{¶ 65} We certainly understand that appellant must be heartbroken and devastated that she does not see her daughter as often as she would like, or as often as she did before she relocated to Louisville. Appellant's move to Louisville meant, however, that one of the

parties–either appellant or appellee–would be unlikely to see the child as frequently as the party had before appellant's relocation. The distance between appellant's and appellee's homes would make mid-week visits, dinners, or exchanges nearly impossible during the school year. Consequently, one of the parties was bound to be displeased with the trial court's decision. A party's unhappiness does not, however, by itself demonstrate that the court abused its discretion or otherwise erred. Instead, as we previously explained, an abuse of discretion ordinarily implies an unreasonable, arbitrary, or unconscionable decision.

{¶ 66} Based upon all of the evidence presented in the case sub judice, "a reasonable court could have awarded residential parent status to [appellant] with whom [the child] had primarily resided." *Maine v. Jones*, 7th Dist. Mahoning No. 06MA191, 2007-Ohio-5043, 2007 WL 2781239, ¶60. The court's failure to do so, however, "does not mean that the court's decision to award such status to [appellee] instead was unreasonable or arbitrary." *Id.* Rather, the evidence in the case sub judice reasonably could support a decision to designate either appellant or appellee the child's residential parent. The trial court was in the best position to evaluate the witnesses' demeanor, attitude, and credibility in order to fashion a custody order that would promote the child's best interest. We simply cannot substitute our opinion for that of the trial court simply because the written record might lead us to a different conclusion. Accordingly, we are unable to conclude that the trial court abused its discretion by terminating the shared parenting decree and by designating appellee the child's residential parent.

C

PARENTING TIME MODIFICATION

{¶ 67} Appellant also argues that the trial court abused its discretion by terminating the

shared parenting plan when it simply could have modified the parties' parenting time

arrangement.

{¶ 68} R.C. 3109.04(E)(2)(a) and (b) govern modifications to shared parenting plans and

state:

> (a) Both parents under a shared parenting decree jointly may modify the
> terms of the plan for shared parenting approved by the court and incorporated by it
> into the shared parenting decree.  Modifications under this division may be made
> at any time.  The modifications to the plan shall be filed jointly by both parents
> with the court, and the court shall include them in the plan, unless they are not in
> the best interest of the children.  If the modifications are not in the best interests
> of the children, the court, in its discretion, may reject the modifications or make
> modifications to the proposed modifications or the plan that are in the best interest
> of the children. * * * *
> (b) The court may modify the terms of the plan for shared parenting
> approved by the court and incorporated by it into the shared parenting decree upon
> its own motion at any time if the court determines that the modifications are in the
> best interest of the children or upon the request of one or both of the parents under
> the decree.  Modifications under this division may be made at any time.  The
> court shall not make any modification to the plan under this division, unless the
> modification is in the best interest of the children.

{¶ 69} In the case at bar, the parties did not jointly agree to a modification.  Thus, R.C.

3109.04(E)(2)(a) does not apply.   Appellant requested a modification, and thus, R.C.

3109.04(E)(2)(b) could apply, so long as the court found that the modification is in the child's

best interest.  The court determined, however, that shared parenting is no longer in the child's

best interest.  The court's finding necessarily encompasses a conclusion that maintaining the

shared parenting plan with modifications to the parties' parenting time is not in the child's best

interest. Consequently, the trial court was not obligated to modify the parties' parenting time arrangement. Instead, the court appropriately exercised its discretion and determined that shared parenting no longer is in the child's best interest.

{¶ 70} Accordingly, based upon the foregoing reasons, we overrule appellant's fifth, sixth, and seventh assignments of error.

IV

{¶ 71} In her eighth assignment of error, appellant asserts that the trial court abused its discretion by finding that a change in circumstances occurred. She contends that her relocation does not, by itself, demonstrate a change in circumstances.

{¶ 72} Initially, we question appellant's assertion that the court found that her relocation constituted a "change in circumstances" within the meaning of R.C. 3109.04(E)(1)(a). The trial court's decision regarding a "change in circumstances" reads as follows:

> [R.C. 3109.04(F)(1)(d)] deals with the child's adjustment to the child's home, school and community. [The child] has moved from her mother's home to her father's home, after her mother moved to the Louisville area. [The child]'s school, church and community connections remain intact. The child's adjustment to these changes in circumstances are as expected.

{¶ 73} Although the court appears to have addressed the "changes" that the child experienced after the child moved from appellant's household to appellee's household and how she has since adjusted to her home, school, and community, we have found nothing in the court's decision to indicate that the court found appellant's relocation to Louisville constituted a "change in circumstances" within the meaning of R.C. 3109.04(E)(1)(a). Additionally, as we previously indicated, (1) R.C. 3109.04(E)(2)(c) does not require a court to find a change in circumstances before it may terminate a shared parenting decree, and (2) R.C. 3109.04(E)(1)(a) is inapplicable

to the facts in the case sub judice.  Consequently, the trial court had no need to find a change in circumstances and any such finding in its decision is superfluous.

{¶ 74} Accordingly, based upon the foregoing reasons, we overrule appellant's eighth assignment of error and affirm the trial court's judgment.

JUDGMENT AFFIRMED.

JUDGMENT ENTRY

It is ordered that the judgment be affirmed and that appellee recover of appellant the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Lawrence County Common Pleas Court to carry this judgment into execution.

A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Harsha, J. & Hoover, J.: Concur in Judgment & Opinion

For the Court

BY:_____
Peter B. Abele, Judge

## **NOTICE TO COUNSEL**

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.